No. 31,722

MARIE FUHS, *Appellant,* v. P. B. BARBER, *Appellee.*

(36 P. 2d 962)

Opinion filed November 3, 1934.

R. E. Melvin and George K. Melvin, both of Lawrence, for the appellant.

Edward T. Riling and John J. Riling, both of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Marie Fuhs, a housewife, twenty-eight years of age, contracted a skin irritation from poison ivy, in May, 1932. It was under her chin and extended well down upon her chest. She consulted Doctor Anderson, and he prescribed as a remedy the use of sugar of lead, which she procured at a drug store. When that sugar of lead had been applied as the doctor prescribed, she went to the store of the defendant, P. B. Barber, to obtain another prescription of sugar of lead. After making the purchase of the sugar of lead and while Mr. Barber was wrapping it up, he inquired what she was using it for, and when the plaintiff told him, he remarked that he had a remedy that was better than sugar of lead. After telling her how to apply it, she was induced to purchase his skin cure and told to use it freely. He told her not to use any more sugar of lead. She purchased a jar of the skin cure, paying 60 cents for it, took it home with her, and stopped using sugar of lead, and began the use of the skin cure. After using the skin cure until the first jar was exhausted, the spot blackened. She did not know what was contained in the skin cure nor did she know of the chemical reaction of the skin cure and the sugar of lead, but applied it as directed. When plaintiff went back she showed the druggist that the spot was growing blacker and he told her to keep on using the skin cure and apply it freely. A few days afterwards plaintiff went back to defendant's store and showed him her throat and chest and at that time it was blacker than before. Defendant then told her to keep on using the skin cure and sold her another jar, telling her it would remove the black, and after she had used two jars and a half, and the spot was still growing blacker, the defendant told her she would have to get a doctor's prescription. She then went to Drs. Sutton & Mellon, of Kansas City, who treated her for two months and removed the greater part of the blackness. The treatment was painful, nerve wrecking and irritating, and there is still a dark spot on her breast, which will be permanent unless she submits to skin grafting, which is painful, expensive and of doubtful success, and would cost $500. She alleged that in the treatments to the present time she has paid doctor's bills

and expenses of $110. The foregoing is substantially the allegations of the petition she filed against P. B. Barber, the druggist, and she asks judgment for $5,000.

Defendant's answer was a general denial except as to facts specifically admitted. It was admitted that defendant is a resident of Douglas county, a registered pharmacist, and is operating a drug store in Lawrence; that defendant sold her sugar of lead and also skin cure, and for further answer he alleged that if plaintiff has sustained any injuries to herself as set out in her petition, they were caused by her own carelessness and negligence.

After the plaintiff had introduced her evidence, substantially as had been set forth in the petition, the defendant demurred to the evidence of plaintiff, and the demurrer was overruled. The testimony of the defendant then offered was substantially the same as has been alleged by plaintiff in her petition, differing only in details.

He testified that he manufactured skin cure; that it contained no poison, but was made up of sulphur, oil of wintergreen, vaseline and lanolin; that he told her about the remedy while he was putting up the sugar of lead, and when asked how it operated told her that some had good results from it and others had not. He told her if she was going to use the skin cure, not to use it in connection with sugar of lead, while she testified that she was told when she purchased the skin cure, not to use more of the sugar of lead, as they did not work well together. He knew when she came back and exhibited the poisoned place that it was the reaction of the sulphur and sugar of lead which made it black. On the other hand, she was not a chemist and did not know of the effect of the combination. She says she did not use any more sugar of.lead, but had been using it for several days previous and had told the defendant that she had.

On the evidence the jury were instructed and, among other things, were told:

"If you believe that Barber sold the skin cure to Mrs. Fuhs, with knowledge of the fact that she had been using sugar of lead and other things, and that he did not tell her in some appropriate manner, either directly or indirectly, that there might unhappy results come from the use of the two together, then I think the plaintiff may recover. On the other hand, if he had no knowledge of the fact that she had been using sugar of lead or did in some appropriate manner advise her in connection with the situation, then I do not think the plaintiff should recover from Mr. Barber. If you do not think there is any liability under the rules I have given you, that would end your further consideration of the case and your verdict should be for the defendant."

The verdict returned by the jury was in favor of Mrs. Fuhs, and was against Barber for $1,000. Motion for a new trial was filed, based on misconduct of the jury, second, erroneous rulings and instructions of the court, and third, that the report and decision is contrary to the law and evidence, and fourth, that the court should have sustained defendant's demurrer to plaintiff's evidence.

The motion was considered for several weeks and was then sustained, the court holding that the ruling on the demurrer to plaintiff's evidence should have been sustained and it also held that the jury should have been instructed on contributory negligence of the purchaser. The court further ordered and adjudged that if appeal is taken and it be adjudged the court was not in error in overruling the defendant's demurrer to plaintiff's evidence, that the new trial should be granted on the ground the court failed to instruct the jury on the effect of plaintiff's contributory negligence, if it found that such negligence existed.

The appeal has been taken and it is urged that the demurrer to plaintiff's evidence could not have been sustained as the plaintiff's evidence showed negligence on the part of the defendant. There was only a slight difference in the testimony of the plaintiff and the defendant. In one instance defendant told her not to use any more sugar of lead, and from his testimony he appeared to think that she was using it after beginning the use of the skin cure. That was a question of fact and was for the determination of the jury. It has been decided many times that conflicts in the evidence must go to the jury alone for settlement. The later cases are *Smith v. Gregg,* 117 Kan. 507, 232 Pac. 217; *Dettmer v. Fulls,* 122 Kan. 98, 251 Pac. 396. The defendant was a registered pharmacist, who was selling drugs and compounding medicines, and the general rule is that they are required to use great care in the sales made. He did not explain to her when he made the sale that sugar of lead could not be used or that it must be thoroughly washed out of the flesh before applying the defendant's remedy with sulphur in it. The reaction should have been and was well known to the defendant, that it would cause blackness of the skin and that the reaction was inevitable. According to her testimony he sold it to her without telling her of the effect. When she had used it a few days the color began to change, first to a yellow, then to an orange and finally to black. When she called his attention to it he then told her that she might keep on using the skin cure, that the blackness would come off. She did

continue to use the skin cure and her throat and chest became blacker and blacker. Later he told her to keep on using it, that the skin cure would finally take the blackness out. It was a question of fact whether he did explain it to her.

In Iowa, where a sale of phosphorus was made to a person who had reached the age of discretion and apparently in the possession of his mental faculties, it was held that in such a case there is no liability unless there is something connected with the transaction or something previously known to the seller indicating that the would-be purchaser cannot safely be intrusted with the substance, and in the absence of such facts a sale of the substance called for may be made without explaining its properties or the manner in which it may be safely used or handled. (*Gibson v. Torbert*, 115 Ia. 163.)

*Davidson v. Nichols*, 11 Allen 514, was a case where a sale, made by a druggist, of an article that was in itself harmless, without knowledge by the vendor that the article was to be used in combination with another article which rendered it injurious. In a note in 13 L. R. A., n. s., 648, where it was reported, it was held:

"The sale of an article in itself harmless, and which became dangerous only by being used in combination with some other article, without any knowledge by the seller that it was to be so used, would not render him liable, . . . where the article sold was in itself harmless, and there were no fraudulent or false representations, and no notice was given him . . . that it was intended to be used in combination with other substances which might cause injury to persons or property."

The rule laid down in a note to *Howes v. Rose*, 55 A. S. R. 251, as to the care to be used by druggists, states:

"In the discharge of their functions, druggists, apothecaries, and other persons dealing in drugs, poisons and medicines, are required not only to be skillful, but also exceedingly cautious and prudent in view of the terrific consequences which may attend the least inattention on their part. The highest degree of care known among practical men must be used by them to prevent injury from the use of their compounds, and they are held to a special degree of responsibility corresponding with their superior knowledge, and are generally held liable for the slightest negligence." (p. 255.)

In support of the statement they cite: *Walton v. Booth*, 34 La. Ann. 913; *Allan v. S. S. Co.*, 132 N. Y. 91; *Smith v. Hays*, 23 Ill. App. 244; *Fleet and Semple v. Hollenkemp*, 13 B. Mon. (52 Ky.) 219; *Brown v. Marshall*, 47 Mich. 576; *Beckwith v. Oatman*, 43 Hun (N. Y.) 265.

The demurrer to plaintiff's evidence was properly overruled in

the first instance. The defendant did not exercise the care required of him in the sale of the skin cure. He knew the effect of the combination of the articles and she did not. He was persistent in telling her to keep on using the preparation and that it would finally remove the darkness. Such conflicts as there were in their evidence must be solved by the jury.

The action of the court in contingently granting a new trial on its ruling on the demurrer to the evidence was erroneous. Its further ruling on the possibilities of the case in the event of an appeal was beyond the power of the court. There were several possibilities involved in the matter, first, the taking of an appeal; second, the ruling on the appeal; third, in the event that there was error in the instructions as to contributory negligence; and fourth, if contributory negligence was afterwards found.

The court may not hold jurisdiction beyond its decision in the present case by the granting of a new trial contingent upon this court finding error in its ruling on a demurrer to evidence.

The judgment is reversed, and the cause remanded for a new trial.