## LILA FREDRICKSON v. ARROWHEAD CO-OPERATIVE CREAMERY ASSOCIATION.[1]

January 21, 1938.

No. 31,363.

[1]Reported in 277 N. W. 345.

*Hunt & Palmer,* for appellant.
*Jenswold & Dahle,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Defendant appeals from a judgment entered after a verdict in plaintiff's favor and a denial of its motion for judgment notwithstanding.

The action is founded upon an alleged violation of 1 Mason Minn. St. 1927, §§ 4172, 4176, resulting, as plaintiff claims, in an impairment of her health while employed by defendant in its creamery at Esko's Corner, in Carlton county. The employment covered a period between June, 1933, and April, 1935, and consisted largely of performing clerical work in the office, checking drivers' reports, and waiting on customers. In the performance of the latter work it was necessary for her to pass through the churn room in traveling between the office and the cooler where the supplies were kept. She made about 50 trips each day in delivering supplies to patrons.

It is plaintiff's claim that a large volume of water was dumped daily upon the floor of the churn room and permitted to run therefrom to the floor of the office and cooler; that the condition of the floors of these rooms was such that water was retained in puddles and depressions from one-half to one inch in depth for long periods of time, making it necessary for the plaintiff, particularly in passing through the churn room, to walk in the water and on the damp floor so that her feet were wet a large part of the time. It is also

her claim that the office in which she worked was improperly heated; that the doors were badly warped and in such condition that the room was cold and damp; and that it was necessary for her, during cold weather, to wear heavy clothes and at times to wear her overshoes and overcoat while in the performance of her duties. Plaintiff further contends that prior to the commencement of her employment she was in good health; that during the first winter she worked for defendant she began to have head colds but was able to check them; that during the winter of 1934-1935 she again began to contract head colds and finally acquired a cough which settled in her chest and persisted to such an extent that she began to receive medical attention from a doctor, and finally on April 3, 1935, upon recommendation of her physician and after an X-ray was taken of her chest, went to Nopeming Sanatorium, where she remained for treatment covering a period of approximately 24 weeks. X-rays taken while at the sanatorium definitely disclosed that plaintiff was afflicted with tuberculosis. Treatment at the sanatorium arrested the condition but left uncertain its prognosis.

Defendant (1) denies that there was negligence on its part, either in the violation of the statutory provisions referred to, or otherwise; (2) maintains that plaintiff wholly failed to establish a causal connection between her working conditions and her physical condition; and (3) contends that if there was any such connection plaintiff was, under the known conditions, precluded from recovering because of her contributory negligence in continuing to work, under known dangerous conditions, and in partaking in other activities away from the place of her employment.

■ It is urged that the statutory provisions relied upon by plaintiff as a basis for recovery do not apply and were not violated. The argument is without merit. The pertinent parts of the provisions referred to read:

"§ 4172. * * * Where wet processes are used, the floors must be so drained that there is no measurable depth of water in which employes must stand while working. Where practicable, dry standing room must be provided for all employes. * * * All such

places of employment shall be well drained and the plumbing thereof at all times kept in proper repair and in a clean and sanitary condition."

"§ 4176. In every place of employment the workrooms shall, so far as the nature of the industry will permit, be properly heated during cold weather. * * *"

Standing while working does not, as claimed by defendant, mean that an employe must remain stationary while performing his work. Such a construction would be unreasonable and would make the statute meaningless.

There was ample evidence from which the jury might find that the provisions of the statute as to leaving water on the floors and as to heating were violated. True, the testimony as to the working conditions complained of was conflicting and might have sustained a contrary finding, but plaintiff's description of the conditions under which she worked was corroborated by the testimony of other witnesses and sustains the jury's finding in respect to the alleged statutory violations.

■ What appears to us to be the important and serious question in the case is the one raised by defendant to the effect that the evidence, taken in its most favorable light, does not establish a causal connection between defendant's negligence in failing to provide proper working conditions and the disease from which plaintiff admittedly was suffering at the time of the trial. That there must be such a causal connection has been well established by our prior decisions. Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35; Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852. The burden of establishing the causal connection was upon the plaintiff. Lillstrom v. N. P. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; Honer v. Nicholson, *supra*. It cannot be established by testimony which is conjectural and speculative. Peterson v. Langsten, 186 Minn. 101, 242 N. W. 549.

Defendant urges with zeal and sincerity that plaintiff's medical testimony was of such a nature that any finding of the jury upon

the question of causal connection must necessarily have been based upon conjecture and speculation. Two medical experts testified in behalf of the plaintiff and one in behalf of the defendant. All were capable and reputable medical men. The physicians who attended plaintiff in the earlier stages of her illness were not called by either party. Plaintiff's witness, Dr. Hedberg, was the attending physician at Nopeming Sanatorium, the institution where plaintiff received treatment for a number of months. He had a wide experience in the treatment of tuberculosis. He testified as follows:

Q. "Assuming the testimony that was given that you heard yesterday is correct, have you an opinion, doctor, in her case, as to what caused the tuberculosis?

The Court: "Just answer yes or no.

A. "Yes.

Q. "And what is your opinion?

A. "I believe that such exposure as described could be considered as a predisposing cause to the breakdown, to any breakdown of latent tuberculosis.

Q. "And is that your opinion, Doctor?

A. "Yes."

The doctor's testimony was somewhat weakened on cross-examination, and if it were the only medical testimony bearing upon the vital question of causal connection it would hardly measure up to the degree of proof required to establish that connection.

Plaintiff's other medical expert, Dr. Spicer, was not an attending physician but one who had considerable experience in tuberculosis cases in army hospitals. His testimony was based upon personal examinations of plaintiff, examination of X-rays, and the testimony of plaintiff and other witnesses. He testified definitely that in his opinion plaintiff's tuberculosis was caused by her working conditions, which lowered her resistance, allowing the tubercle germ to become lighted up and reactivated. He attributed the lowering of plaintiff's resistance to the fact that she worked all winter in a cold, drafty room where her hands were numb and her feet were cold and wet. Such working conditions, he contended, could and in

his judgment did, in plaintiff's case, lower her resistance to the extent that tuberculosis resulted. Defendant's counsel endeavored, in a searching cross-examination, to draw from Dr. Spicer the admission that the question as to whether plaintiff's tuberculosis was caused by the working conditions or by other circumstances was speculative and conjectural, but the doctor's testimony was not very much shaken upon that important issue and in our judgment was sufficient to go to the jury on the question of causal connection and to warrant a determination by the jury that such connection existed between the employment and the disease.

On the question of proximate cause, this court in Healy v. Hoy, 115 Minn. 321, 323, 132 N. W. 208, 209, said:

"The question of proximate cause of an injury is often obscured by technical learning, but in its last analysis it is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence in each particular case. If the evidence in a particular case leaves the question a matter of conjecture, the defendant is entitled to a directed verdict; but if the evidence, direct and circumstantial, furnishes a reasonable basis for the inference by the jury of the ultimate fact that the alleged negligence was the cause of the injury or death complained of, it is sufficient to support a finding on the question in favor of the plaintiff."

There was no motion for a new trial. Defendant relies upon its motion for judgment *non obstante*. This admits for the purpose of the motion the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. That view of the evidence most favorable to the adversary must be accepted. Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377; Olson v. Byam, 176 Minn. 619, 224 N. W. 256; 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 9764.

There was no claim on plaintiff's part that she acquired the tubercle bacillus by reason of any negligence of defendant nor was it claimed that the germ entered her system after the commencement of her employment by defendant. In fact, all of the medical

authorities agree that there was no way of knowing when or how she acquired the germ. The case was predicated upon the theory that whether she was infected with it at the commencement of her employment or whether she acquired it during the course of the employment the working conditions afforded by defendant were such that her resistance to tuberculosis, to which a person having a tubercle germ is susceptible, was so reduced as to make her a prey to the dreaded disease, which in the instant case followed after several months of her employment. We have here the germ, employment conditions which, in the minds of the medical witnesses, were sufficient to light it up, and the resultant tuberculosis.

A careful consideration of the record herein leads to the conclusion that the finding of the jury that defendant's negligence in failing to provide for plaintiff a proper place in which to work, in violation of the statutory requirements, was the proximate cause of the impairment of her health.

■ The court submitted to the jury the issue of contributory negligence. We need not determine whether in a case of this kind, involving the violation of a statute, defendant was entitled to an instruction upon that question. Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125; Sandhofner v. Calmenson, 170 Minn. 69, 212 N. W. 11; Dohm v. R. N. Cardozo & Brother, 165 Minn. 193, 206 N. W. 377.

Upon conflicting evidence the jury found against defendant upon the issue. It had the benefit of the testimony regarding the history of some of the members of plaintiff's family, of the conditions under which she lived at home, and of her activities while away from the scene of her employment. It also heard the testimony of the plaintiff and other witnesses concerning her previous condition of health and of tests made prior to her employment indicating that she was in good physical condition. We cannot say that the jury went wrong in finding that there was no negligence upon plaintiff's part which contributed to her disease. Where the violation by an employer of a statute intended to safeguard employes is the proximate cause of injury to an employe, the employer may not assert that the employe assumed the risk of injury by continuing to work

with knowledge of the employer's failure to comply with the statute. Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125.

Judgment affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

