TERRANCE KRUEGER, A MINOR, BY DELBOURNE KRUEGER, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. CHESTER KNUTSON AND OTHERS.

111 N. W. (2d) 526.

October 6, 1961—Nos. 38,142, 38,154, 38,155, 38,157.

*Robert Johnson, Leo Lauerman,* and *Daniel F. Foley*, for plaintiffs.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Manson Reedal,* for defendant Wohlers.

NELSON, JUSTICE.

Two negligence actions were consolidated for jury trial. Terrance Krueger, a minor, by Delbourne Krueger, his father and natural guardian, sued for personal injuries resulting from an explosion. Delbourne Krueger sued for special damages incurred by reason of medical, hospital, and surgical expenses growing out of said personal injuries. Originally these suits were commenced against Chester Knutson and Agnes Knutson, his wife; Neil Wohlers, an individual and d.b.a. Wohlers Pharmacy; and Don Wheeler, individually and d.b.a. Wheeler Drug.

At the close of plaintiffs' evidence the trial court granted a dismissal to defendant Wheeler on the ground that no proof of negligence had been shown against him. The jury found by special verdict that the negligence of neither Chester Knutson nor Agnes Knutson was a proximate cause of the explosion and they were thus eliminated as defendants.

Some of the questions submitted to the jury and its findings were as follows:

"Question No. 1: Did the defendant Neil Wohlers supply the potassium chlorate to either Roger Knutson or Terrance Krueger that was used in the rocket which exploded in the basement of the Knutson home on February 8, 1958?

"Answer Yes or No: Yes"

"Question No. 2: Did Neil Wohlers act in a negligent manner at the times he supplied the potassium chlorate to either Roger Knutson or Terrance Krueger?

"Answer Yes or No: Yes"

"Question No. 3: Was negligence of Neil Wohlers a proximate cause of the explosion in which Terrance Krueger was injured?

"Answer Yes or No: Yes"

"Question No. 8: Did Terrance Krueger act in a negligent manner at the time of the explosion which caused his injuries?

"Answer Yes or No: No"

"Question No. 10: Did Terrance Krueger fully appreciate the dangers involved in loading the rocket which exploded and caused his injuries and did he voluntarily assume the risk of being injured?

"Answer Yes or No: No"

"Question No. 12: Did Delbourne Krueger act in a negligent manner in permitting his son Terrance to experiment with and assist in loading rockets in the basement in the Knutson house on February 8, 1958?

"Answer Yes or No: No"

Thus, by special verdict, the jury found the defendant Wohlers negligent and his negligence the proximate cause of Terrance Krueger's injuries. The verdicts returned and judgments thereafter entered awarded $5,000 general damages to Terrance Krueger and $1,279.43 special damages to Delbourne Krueger.

Defendant Wohlers moved for an order granting judgment notwithstanding the verdict and plaintiff Terrance Krueger moved for a new trial on the issue of damages only, later abandoning the motion with respect to defendants Chester and Agnes Knutson and Don Wheeler. The trial court denied both motions. Plaintiff Terrance Krueger appealed from the trial court's order denying his motion, and defendant Wohlers appealed from the judgments entered against him. The appeals were consolidated for hearing and argument in this court.

Briefly the pertinent facts involved in this litigation are as follows: For some weeks prior to February 8, 1958, Terrance Krueger and several other boys from Lake City High School formed a rocket club and proceeded to experiment in making rockets. Several experiments occurred prior to February 8, 1958, when a rocket exploded while being filled, causing serious injury to Terrance Krueger's left hand. The experiments were conducted in the basement of the home of Chester and Agnes Knutson, their son also belonging to the rocket club. The members of the club were approximately 16 years of age and juniors in high school.

In order to propel the rockets it was necessary to fuel them. It was while another boy was tamping a rocket with fuel that the explosion occurred which caused the injury. Potassium chlorate had been mixed

with sulphur and charcoal to make the fuel. The record indicates that Terrance did not know the properties of potassium chlorate except that when mixed with sulphur and charcoal the mixture would "burn" if a match was applied to it, but he did not know that the tube could blow up if tamped. The record indicates that all of the boys present assumed that a fuse would have to be attached and a match applied.

A fuse about two feet long had been attached to all rockets and when firing a rocket the boys would all get out of the way. On February 8, Roger Knutson was tamping the mixture while Terrance held the tube. They had proceeded similarly on previous occasions. Two other boys were present in the room but none appears to have had any knowledge that the mixture would explode upon tamping.

Potassium chlorate is a potent oxidizing agent and when brought in contact with an oxydizable substance it may explode. Dr. Robert Brastad, professor of chemistry from the University of Minnesota, testified that untrained individuals could not judge when potassium chlorate becomes dangerous. The dangerous properties of the chemical were not seriously disputed by defendant Wohlers. Dr. Brastad characterized potassium chlorate as an inherently dangerous substance.

There is testimony in the record that the potassium chlorate which was used in the rocket which exploded was purchased at Neil Wohlers' drug store; that the boys told Wohlers that they were working with rockets. The record shows that Wohlers is a registered pharmacist and has available to him in his store at all times the National Formulary and Remington's Practice of Pharmacy, which are authorities relied on by pharmacists in actual practice. These books describe the properties of potassium chlorate. The record indicates that Wohlers knew the chemical potassium chlorate to be explosive if combined with an organic material but at no time since leaving pharmacy school had he consulted these books about this compound and it does not indicate that he gave any warning to the boys concerning the dangerous explosive properties of potassium chlorate.

Plaintiffs contend that the general standard of care of a druggist in a community the size of Lake City in the dispensing of potassium chlorate, sulphur, and charcoal to people, including children of the

age of 16, would be to have proper labelling and to sell it only to competent persons and not to minors, who are sometimes irresponsible. Plaintiffs contend that the standard of care would further require that if a druggist did sell these chemicals to 16-year-olds, he caution them on the use of combinations of the chemicals and to make very plain the dangerous properties of the mixture; that, furthermore, if the druggist knew the chemicals would be used in preparing rocket fuel, the standard of care would require that he caution purchasers of this age very strongly as to the properties potassium chlorate has when combined with other chemicals; that if the druggist sold sulphur and charcoal knowing they were to be used with potassium chlorate as rocket fuel the standard of care would call for the druggist to caution very highly on the danger of combining those chemicals; and that if the druggist should sell potassium chlorate alone to a 16-year-old boy the standard of care would require the druggist to warn of the dangerous combustible properties of the drug.

Terrance Krueger testified that defendant Wohlers placed the potassium chlorate in a paper bag. There was other testimony that this was not the usual way of dispensing that chemical. Defendant Wohlers denies any knowledge of selling potassium chlorate to the boys. Terrance said also that the boys had discussed the club and its purposes with Wohlers, who did not recall specifically but said that they "probably did" do so.

■ Defendant Wohlers contends that the trial court erred in denying his motion for a directed verdict. The rule is well established that where a party makes a motion for judgment notwithstanding the verdict but makes no motion for a new trial the scope of review on appeal from the judgment is limited. Such motion accepts the view of the evidence most favorable to the verdict. Rule 50.02 (1) of Rules of Civil Procedure, referring to a motion for a judgment notwithstanding the verdict, provides in part as follows:

"* * * and the court shall grant the motion if the moving party would have been entitled to a directed verdict at the close of the evidence."

A defeated party waives all errors which would be grounds for a

new trial by resting his cause solely upon a motion for judgment notwithstanding the verdict.

In Mishler v. Nelson, 194 Minn. 499, 501, 260 N. W. 865, 866, we said:

"* .* * in view of the rule, repeatedly announced by this court, that where 'defendant rests upon its motion for judgment without asking for a new trial, errors at the trial, whether in the rulings or in the instructions to the jury, cannot be reviewed or considered. The only question for consideration is whether it clearly appears from the record that plaintiff is not entitled to recover.' [Citing cases.]"

See, Koch v. Lidberg, 219 Minn. 199, 17 N. W. (2d) 308.

■ In Cofran v. Swanman, 225 Minn. 40, 42, 29 N. W. (2d) 448, 450, this court made the following statements, speaking through Mr. Justice Matson:

"A motion for judgment non obstante accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party, and if the application of this rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177; 3 Dunnell, Dig. & Supp. § 5082.

\* \* \* \* \*

"* * * If, however, upon a search of the entire record, after taking the evidence in the light most favorable to the verdict and giving the adverse party the benefit of every inference reasonably deducible therefrom, the evidence as a whole manifestly and so overwhelmingly preponderates to the contrary as to be practically conclusive against the verdict, the motion for judgment non obstante should be granted. Although the right to set aside a verdict is to be exercised with extreme caution, there is a positive duty to do so when the evidence so overwhelmingly preponderates against the verdict as to leave no reasonable basis for its support.

"In determining whether the evidence sustains the verdict, it is not

for the court to weigh the evidence other than to determine its sufficiency in law."

Also see, Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459; Austin v. Rosecke, 240 Minn. 321, 61 N. W. (2d) 240.

The rule has been consistently followed that where a party does not ask for a new trial but only for judgment notwithstanding the verdict, the only question he may raise on appeal from an order denying his motion is whether the evidence is *conclusive* against the verdict. National Cash Register Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585. It must clearly appear from the record that the verdict should not stand. Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569.

■ Under such circumstances the theory upon which the case was tried below becomes the law of the case and must be adhered to on appeal. This is especially true where there is no motion for a new trial.

Since the only question for consideration on defendant Wohlers' appeal is whether it clearly appears from the record that plaintiffs are not entitled to recover, other assignments involving alleged errors at the trial cannot be considered.

It is settled law in Minnesota that a motion for judgment non obstante must be denied except in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being against the entire evidence or contrary to the law applicable to the case. See, Satter v. Turner, 257 Minn. 145, 100 N. W. (2d) 660; Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

We said in Zuber v. N. P. Ry. Co. 246 Minn. 157, 177, 74 N. W. (2d) 641, 655, that:

"Since this is a negligence case it is clear that, where different minds may draw different conclusions from the evidence or the evidence is conflicting in regard to the negligence of the defendants, the contributory negligence of the plaintiff, and the assumption of risk on the part of the plaintiff, these questions should all be submitted to the jury for determination. We think the evidence is such here."

We think the evidence is such in the instant case since conflicting stories have been presented and we have a jury finding that the plaintiffs ought to prevail. The jury being the trier of fact, and supreme in that regard within certain well-defined limits, its verdict must, under the circumstances of this appeal, be sustained unless the evidence against the verdict is conclusive.

There is evidence in the record concerning the explosive characteristics of potassium chlorate when brought into contact with certain other substances which may react with it.

In Benes v. Campion, 186 Minn. 578, 581, 244 N. W. 72, 73, we said:

"* * * a maker *or dealer* who puts out an article which is poisonous or dangerous to use, when used as intended, *without giving notice of its dangerous qualities,* is liable not only to the buyer but to any person who suffers injury by the use thereof, such injury being one that might reasonably be anticipated." (Italics supplied.)

It has been held that where the druggist knows that a drug, harmless in itself, is to be mixed with, or used in connection with, another which would then have an injurious effect, of which the purchaser has no knowledge, he should advise the purchaser of it, and a failure to do so would make him liable for the consequences. See, 28 C. J. S., Druggists, § 9a(4); Fuhs v. Barber, 140 Kan. 373, 36 P. (2d) 962; Tucker v. Graves, 17 Ala. App. 602, 88 So. 40; Trumbaturi v. Katz & Besthoff, 180 La. 915, 158 So. 16. On the civil liability of druggists generally, see 17A Am. Jur., Drugs and Druggists, §§ 36 to 54.

The foregoing authorities indicate that registered pharmacists selling drugs must exercise the highest degree of caution and that it is the duty of druggists to know the properties of drugs which they sell and to employ persons who are capable of discriminating between them.

Other cases bearing upon similar issues, involving children, are: Mattson v. Minnesota & N. Wis. R. Co. 95 Minn. 477, 104 N. W. 443; Mikel v. Aaker, 256 Minn. 500, 99 N. W. (2d) 76; and 13 Dunnell, Dig. (3 ed.) § 7029.

The questions whether the causal connection between the sale and the injury was broken in this case and whether lack of knowledge of the dangers of explosives on the part of the boys would prevent their acts from amounting to an intervening cause may be answered in this court's discussion of evidence in Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640.

Any claim that the father, Delbourne Krueger, was negligent and and that such negligence bars the action by Terrance finds no basis in the evidence and it cannot as a matter of law be imputed to Terrance. The issue of contributory negligence on the part of Delbourne Krueger was for the jury, as were assumption of risk and contributory negligence.

We have said repeatedly that it is only where the evidence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men that the court can enter upon the province of the jury to direct a verdict for the defendant. 13 Dunnell, Dig. (3 ed.) § 7033; Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580.

The jury was at liberty to accept plaintiffs' version or that of defendant Wohlers. The jury having given credence to the testimony of plaintiffs, and having discarded that of defendant, there is little that can be accomplished by defendant's appeal. Sroga v. Lund, 259 Minn. 269, 106 N. W. (2d) 913.

Since defendant made no motion for a new trial, the trial court's charge became the law of the case, and whether the verdict is sustained by the evidence must be determined by application of the rules of law laid down in the instructions. See, Rule 51, Rules of Civil Procedure; Smith v. Otto Hendrickson Post 212, 241 Minn. 46, 62 N. W. (2d) 354.

Defendant's motion for judgment notwithstanding the verdict admits for the purposes of the motion the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. That view of the evidence most favorable to the adversary must be accepted. Fredrickson v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 277 N. W. 345.

The court fully submitted to the jury the issues of proximate cause,

negligence, contributory negligence, and assumption of risk, clearly stating the rights and duties of the parties. It is our view that there was sufficient evidence to sustain the verdicts returned.

Plaintiff Terrance Krueger's appeal is based upon the claim that the damages are so insufficient as to appear to have been given under the influence of passion or prejudice. Rule 59.01 (6), Rules of Civil Procedure. We must determine whether the award of $5,000 should be set aside as inadequate and a new trial granted on the issue of damages only. Plaintiff contends that the evidence shows that the explosion on February 8, 1958, resulted in a severe injury to Terrance's left hand, and that after all treatment the evidence still showed plaintiff suffering a 90-percent disability of the hand or 81-percent impairment of the arm as a result of his injury; that said boy was in good health before the accident, was industrious, and had a life expectancy of 50.34 years.

It is the rule in this state that the question whether a verdict is adequate is addressed in the first instance to the sound discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. In fact, we have said that the matter of granting a new trial for excessive or inadequate damages rests almost wholly in the discretion of the trial court. See, 14 Dunnell, Dig. (3 ed.) § 7133; Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L. R. A. (N. S.) 439; Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391.

New trials have been ordered by this court where on the record the damages awarded appeared to be entirely inadequate. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248. We have consistently applied the rule, however, that it is only where a verdict is so inadequate or excessive that we are convinced that it could only have been rendered on account of passion or prejudice that we will interfere. This court in Brannan v. Shertzer, 242 Minn. 277, 287, 64 N. W. (2d) 755, 761, said:

"* * * A verdict cannot be set aside simply because this court may be of the opinion that it was not adequate. Because other juries

have returned verdicts for larger amounts for similar injuries does not authorize us to interfere with the verdict. There is no fixed standard by which loss for injuries can be determined. Naturally the minds of reasonable men differ widely upon such a proposition. As pointed out in the case of Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391, this court will not interfere with a verdict in such cases unless the damages awarded clearly appear to be excessive or inadequate and to have been given under the influence of passion or prejudice. And whether a new trial upon the ground of excessive or inadequate damages should be granted or refused or whether the verdict should be reduced or increased rests in the sound judicial discretion of the trial court."

■ We have said that where damages are manifestly inadequate and in addition thereto there is a suggestion that they were awarded as a compromise between the right of recovery and the amount of damages sustained, a new trial of all the issues will ordinarily be granted. Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193; 14 Dunnell, Dig. (3 ed.) § 7141, and cases cited; 5 Id. § 2598.

In Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133, plaintiff Ivan Berg had expended $269 for medical care. He testified that he suffered property damage of $600 to his automobile, and that if he should undergo a certain operation future medical care would amount to $582. The jury found that he had suffered damages to his automobile in the amount claimed, $600, and to this they added $5,000 as general and special damages for his personal injuries. We said in that case (244 Minn. 393, 70 N. W. [2d] 136):

"* * * The jury having returned exactly what was asked for in the matter of property damage and having added thereto $5,000 as applicable to the other items of his claim, we cannot say that the verdict was entirely inadequate and that the trial court abused its discretion in denying plaintiff a new trial."

A review of Minnesota decisions involving adequacy of verdicts discloses that total verdicts were sometimes less or only slightly more than the proven special damages and therefore practically nominal as to general damages. In such cases the record would naturally give rise to

a strong inference that the jury had compromised between the question of right of recovery and the amount of the damages and that, therefore, neither party to the action had been afforded his fair day in court. In the instant case the total amount of the special damages consisting of medical, hospital, and surgical expenses incurred in behalf of Terrance Krueger was $1,279.43. The attorneys agreed upon this amount, the court submitted it in its instructions, and the jury returned a verdict for the full amount of the special damages claimed. Under these circumstances it becomes patently difficult to establish that the verdict returned by the jury in favor of Terrance Krueger was given under the influence of passion and prejudice. To warrant the granting of a new trial by this court on the ground of inadequate or insufficient damages, the record must indicate a clear abuse of discretion on the part of the trial court in denying the motion for a new trial.

In Stacy v. Goff, 241 Minn. 301, 62 N. W. (2d) 920, plaintiff was awarded a verdict of $7,905. Her medical expenses were $3,264.60; there appears to have been a loss of wages of $5,800. Her total special damages thus were in excess of the verdict returned in her favor. Consequently, this court held in the light of this record that the verdict returned was so inadequate as to have the appearance of being influenced by passion and prejudice. See, Olson v. Christiansen, *supra*; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695; Seydel v. Reuber, 254 Minn. 168, 94 N. W. (2d) 265.

In Schmidt v. Chicago, M. & St. P. Ry. Co. 108 Minn. 329, 122 N. W. 9, plaintiff was injured while acting as a brakeman in defendant's service and recovered a verdict for $2,500. He moved for a new trial upon the ground that the amount was inadequate and that the jury was influenced by passion and prejudice and upon the further ground that the verdict was not justified by the evidence. This court held (108 Minn. 330, 122 N. W. 9):

"Whether a new trial, upon the ground of excessive or inadequate damages, should be granted or refused, rests in the sound judicial discretion of the trial court. [Case cited.] In cases where the plaintiff is entitled to a verdict for substantial damages, and the jury awards nominal damages only, the trial court may, in its discretion, set the ver-

dict aside and grant a new trial. [Cases cited.] No doubt cases arise when it is apparent, from some event transpiring during the course of the trial, that the jury were influenced in such a manner as to cause them to return a verdict contrary to the evidence. From the record now before us, we are unable to discover any line of evidence or incident during the trial which could have had any such effect."

Clearly the foregoing cases do not furnish support to the claim that the verdict of $5,000 returned in favor of Terrance was so inadequate as to have the appearance of being influenced by passion and prejudice when in the same trial the jury returned a verdict for special damages as agreed upon and submitted. The question is not whether we would have returned a higher verdict had we been sitting as the jury but whether the verdict returned by the jury is so inadequate under all the circumstances that it could only have been rendered on account of passion or prejudice.

Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination. See, Kundiger v. Metropolitan Life Ins. Co. 218 Minn. 273, 282, 15 N. W. (2d) 487, 493; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504.

In Litman v. Walso, 211 Minn. 398, 402, 1 N. W. (2d) 391, 393, we said:

"* * * in actions to recover unliquidated damages, such as actions for personal injuries * * * where plaintiff's damages cannot be computed by mathematical calculation, and are not susceptible to proof by opinion evidence, and are within the discretion of the jury, * * * in such cases the court will not interfere with the verdict unless the damages awarded appear clearly to be excessive or inadequate, as the case may be, and to have been given under the influence of passion or prejudice."

This court remarked in Zaikaner v. Small, 256 Minn. 275, 282, 98 N. W. (2d) 247, 252:

"* * * It is, of course, always the duty of the trial court to keep the jury within the bounds of reason, as it is the duty of the appellate court to keep the trial court within the bounds of judicial discretion. It is not enough to justify reversal that this court would have been satisfied

with a smaller verdict. This court recognizes that when the trial court is called upon to grant a new trial on the ground of the excessiveness of a verdict, or on any other grounds, it occupies a position of practical advantage over the appellate court. *It has the benefit of the atmosphere of the trial as well as the entire proceedings below, much of which the record never discloses."* (Italics supplied.)

The jury was empowered to assess the damages in the instant case. Not even the trial judge, hearing the evidence firsthand and in part sharing the jury's experiences, could substitute his judgment for that of the jury. He may always state the applicable law but the jury must find the facts. The trial judge, however, possesses a wide range of discretion in such matters after the verdict has been rendered and he may within reason unconditionally impose additurs or remittiturs or he may in the interests of justice impose a new trial. But those matters rest almost wholly within his discretion, and the exercise of that discretion is rarely disturbed on appeal unless there has been what is termed a clear abuse.

In Larson v. Degner, 248 Minn. 59, 67, 78 N. W. (2d) 333, 339, we said:

"* * * an appellate court should not revise the amount of a verdict unless it shocks its sense of justice and the impropriety of allowing the verdict to stand is so manifest as to show a clear abuse of discretion. No two cases are alike and damages to be allowed in each case depends upon the particular facts involved."

We said in Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133, that whether a new trial upon the ground of excessive or inadequate damages should be granted or refused, or whether a verdict should be reduced or increased, rests in the first instance in the sound judicial discretion of the trial court, and unless there is a clear abuse of discretion its decision will stand, concluding in that case after viewing the record as a whole, that the trial court's denial of motions for a new trial did not constitute the clear abuse of discretion which would warrant reversal and ordering of new trials.

Counsel for plaintiff stresses the testimony of Dr. Paul Roger Lipscomb as to the injuries and claims it is conclusive on the jury and that

this is true particularly because the defense offered no medical testimony in opposition thereto.

It must be assumed that the jury gave consideration to Dr. Lipscomb's testimony and recognized that there was no opposing medical testimony and that the trial court had these factors in mind both during the course of the trial and upon the arguments in support of the motions for a new trial. It was the prerogative of the jury to give full consideration to the medical testimony, but the jury was not conclusively bound to accept in every detail the medical testimony submitted.

See this court's discussion of "expert opinion" in Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591, and State v. Cox, 172 Minn. 226, 215 N. W. 189. Medical experts are permitted to give their opinions upon the very issue which the jury will have to decide, but such opinions are not conclusive unless so positive as to exclude all doubt as to the matter on which they are given and unless based on testimony which is positive, consistent, unimpeached, and uncontradicted. Where the opinion does not exclude other possibilities or is not based on such testimony, its weight is for the jury. See, 7 Dunnell, Dig. (3 ed.) § 3327.

■ Fundamentally the trial court is in the best position to decide the adequacy or inadequacy of a verdict. It follows that its decision on a motion for a new trial based on inadequacy of the verdict will be disturbed on appeal only when error or abuse of discretion is clearly demonstrated. See, Oleck, Damages to Persons and Property, §§ 153 and 154.

It is our view that since the evidence fails to disclose the existence of passion or prejudice on the part of the jury the record furnishes no support for setting aside the jury's findings on the ground that the jury award to Terrance Krueger was *entirely* inadequate.

Affirmed.

OTIS, JUSTICE (dissenting).

I dissent. An award of $5,000 invested at 4 percent will yield in principal and interest the sum of only $233 a year during the expected span of Terrance Krueger's life. He has experienced an 81-percent permanent disability of the left arm and a 90-percent permanent disability of the left hand. In my opinion, for a boy 16½ years old, the verdict is inadequate as a matter of law.

Without reference to the other elements of damages, plaintiff's vocational limitations alone require an additur in recognition of his reduced earning capacity. I would grant a new trial on the issue of damages unless defendant Wohlers consents to an additur of $5,000.