**Donald G. POMIJE, et al., Appellants,**

v.

**Leo A. SCHEIBER, Respondent.**

**No. C4-84-1841.**

Court of Appeals of Minnesota.

July 23, 1985.

Theodore R. Mellby, Montgomery, for Donald Pomije.

Keith D. Johnson, Wold, Jacobs & Johnson, Minneapolis, for Helen M. Pomije.

Marvin E. Lundquist, Mankato, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellants, Donald G. and Helen M. Pomije, appeal from the order denying their

motion for a new trial. They assert that the jury verdict in their action for damages and loss of consortium was the result of passion and prejudice, that the damages are inadequate, and that the trial court improperly instructed the jury. We affirm.

### FACTS

On February 17, 1978, a vehicle driven by Donald Pomije and a vehicle driven by respondent, Leo Scheiber, collided at an intersection. Scheiber admitted liability for the accident. The only issue at trial was the nature and extent of damages.

At trial, Pomije alleged that he suffered an injury to his left shoulder, his neck, and his lower back as a result of the accident. He sought damages for past and future medical expenses, pain and suffering, lost wages, permanent disfigurement, and permanent impairment of physical ability and earning capacity. Mrs. Pomije sought damages for loss of consortium.

The testimony of three doctors, Lehrer, Bert and McCain, was presented by video depositions. Lehrer and Bert administered medical treatment to Pomije for the alleged injuries subsequent to the accident. McCain testified as Scheiber's medical expert. Additionally, records of Dr. Richter, a chiropractor who had treated Pomije both before and after the accident, and Dr. Daly, a physician who treated Pomije after the accident, were introduced at trial.

Lehrer had been the family physician for the Pomijes since 1960. Pomije saw Lehrer on February 18, 1978, the day after the accident. Pomije testified he complained to Lehrer at that time of pain in his neck and shoulder. Lehrer's notes, however, are silent regarding the injuries alleged here. After eight visits within three months, Lehrer referred Pomije to Daly, a specialist in orthopedic surgery.

Pomije first saw Daly on May 11, 1978. Medical records indicate a diagnosis at that time of arthritis of the neck with a neuritis of the nerves that extend from the neck to Pomije's left hand. Appropriate medical treatments were given.

On July 6, 1978, Pomije returned to Lehrer with complaints of pain in his lower back. This is the first time medical records indicate that he had complaints of low back pain subsequent to the accident. He was also treated by a chiropractor at this time. Lehrer had previously seen Pomije for similar complaints in 1968 and 1969. Pomije also received chiropractic treatments for low back pain in 1972, 1973, and 1976.

Pursuant to a referral by Lehrer, Pomije returned to Daly for treatment of his low back pain. The diagnosis at that time was lumbar disc syndrome. Pomije was placed in traction and remained hospitalized from July 6, 1978 through August 21, 1978.

After his release from the hospital, Pomije saw Daly regularly. On August 30, 1979, pursuant to continuing complaints by Pomije, Daly diagnosed that Pomije had an inflammation of the bursa of the left shoulder.

Bert assumed the care of Daly's patients when the latter was involved in a serious automobile accident. Pomije continued to complain of pain in his left shoulder. An arthogram indicated that he had a left rotator cuff tear. Bert performed surgery on the shoulder in January 1981 and sutured the tear. Pomije was in the hospital from January 25, 1981 until February 2, 1981. Because his arm had to be immobilized following the surgery, he did not return to work until April 3, 1981.

Subsequent hospitalization a year later was also necessary to perform manipulation on the shoulder. At that time, Pomije was hospitalized from March 3 through March 5, 1982, but did not return to work until March 12, 1982.

Bert testified that it was his opinion that the rotator cuff tear was caused by the accident. He also testified Pomije had a 30% permanent partial disability because of the tear due to the limitation of motion and pain caused by any overhead activity. He recommended that Pomije restrict any weight load lifted to 15–20 pounds, and that he should avoid climbing and overhead work.

McCain testified that Pomije had a 25% permanent partial disability of the shoulder but that the disability was not caused by the accident. His testimony indicates that when a rotator cuff tear occurs, the pain is immediate and excruciating. Lehrer also testified he could not causally relate the rotator cuff tear to the accident inasmuch as there was no claim of excruciating pain or lack of mobility consistent with such an injury when he was treating Pomije after the accident. The record indicates that such an injury could also be a product of degeneration brought on by age.

Bert testified that Pomije's low back pain was a result of the accident, and assessed a 5% permanent partial disability to the spine. He testified that Pomije had arthritis in his neck, that the accident aggravated that condition, and that Pomije had a 5% permanent partial disability of the neck. McCain testified that Pomije had no permanent lower back disability and no evidence of impairment to the neck.

Both Pomije and Mrs. Pomije testified that the pain from Pomije's injuries necessitated separate sleeping accommodations. However, the record reflects that by the time of the trial they had resumed sleeping together.

Pomije was 51 years old at the time of the trial. At that time, he had been employed as a serviceman at Minnegasco for 17 years. Additionally, in the summers he worked part-time at Green Giant two or three hours a day. His job at Minnegasco includes installation and servicing of various gas appliances, and has not changed since the accident. His pay increases since the accident have been the same as his fellow workers.

Pomije is also active in other areas of his life. He is a fireman, plays golf, drives a tractor on his farm, coaches a baseball team, and is on the auxiliary police force.

There is some indication of inconsistent testimony from Pomije regarding his injuries as reported to Bert and Lehrer.

The parties stipulated that Pomije's automobile was damaged in the amount of $700 as a result of the accident. Medical and hospital expenses incurred up to the time of trial were $9,537.15. Pomije's total claim for wage loss was $6,166.20. Scheiber admitted responsibility for the loss of wages from the date of the accident to approximately May 1, 1978. Pomije estimated his future medical expenses would be in the range of $2,400–$7,200.[1] The claim for permanent disfigurement is based upon the scar left as a result of the surgery to repair the rotator cuff tear.

Both counsel submitted requests for instruction on the issue of damages, both reviewed the court's proposed instructions, and the court inquired of both regarding any errors in the jury charge. The Pomijes' counsel made no objection.

The jury returned with a verdict approximately seven hours after it began deliberations. The jury found that Pomije had no permanent disability, that he sustained no permanent disfigurement, and the jury made no award for wage loss. However, the jury found that Pomije was disabled for 60 or more days as a result of the accident. The court indicated to the jury that the verdict was inconsistent, first, because Scheiber admitted responsibility for any wage loss from the date of the accident to approximately May 1, 1978, and second, because the 60-day disability threshold could not be met without including all claimed periods of lost work. The jury deliberated another fourteen minutes and returned a verdict which found that Pomije had sustained permanent injury, was disabled for 60 or more days, and had sustained permanent disfigurement. The jury awarded $12,336 for past and future medical expenses, $6,166.20 for loss of earnings, and $3,178 for general damages. No award was given for loss of consortium.

## ISSUES

1. Is the jury award of damages justified by the evidence?

---

**1.** Two or three physician visits per year, $100– $300 per visit, with a 24-year life expectancy.

2. Was the verdict given under the influence of passion and prejudice?

3. Did the trial court err in its instructions on damages?

## ANALYSIS

■ 1. The Pomijes assert that the jury's award of general damages and denial of award for loss of consortium is not justified by the evidence pursuant to Minnesota Rule of Civil Procedure 59.01(7). This argument is not persuasive.

There is no fixed standard by which damages for injuries can be measured. An award will not be overturned because an appellate court might have allowed a more generous recovery or because another jury might return a larger verdict. *Tuominen v. Waldholm*, 301 Minn. 492, 493, 221 N.W.2d 709, 710 (1974). Furthermore, when the trial court is called upon to rule on a motion for a new trial on the grounds of insufficiency of damages, it has a practical advantage over the appellate court. *See Krueger v. Knutson*, 261 Minn. 144, 158, 111 N.W.2d 526, 535 (1961). The trial court has the benefit of the atmosphere of trial as well as the entire proceeding below, much of which the record never discloses. *Id.* Thus, "[i]t is the rule in this state that the question of whether damages are adequate is addressed in the first instance to the discretion of the trial court." *Tuominen*, 301 Minn. at 493, 221 N.W.2d at 710. A trial court's denial of a motion for a new trial on the grounds of inadequacy of damages will not be overturned except in the most unusual circumstances which constitute a clear abuse of discretion. *Krueger*, 261 Minn. at 154, 111 N.W.2d at 533.

■ Pomije asserts that the evidence indicates he has at least an undisputed 25% permanent disability of his left shoulder. In support of this permanent disability argument, he cites the jury's award of full medical expenses and its finding of disability for more than 60 days. Pomije claims neither of these circumstances can be explained without concluding that the jury found each of the injuries complained of by him were directly caused by the accident. Even assuming that the jury so found, an award of general damages need not follow as a matter of course. *See Kinning v. Sutton*, 300 Minn. 555, 220 N.W.2d 485 (1974); *Gibson v. Sandstrom*, 299 Minn. 220, 216 N.W.2d 833 (1974). The circumstances here do not meet the stringent test set forth in *Krueger*. There was no abuse of discretion by the trial court in refusing to grant a new trial.

Further, Pomije's disability has not substantially affected his ability to continue with a very active schedule of employment, volunteer, and recreational activities. The record reflects that the alleged impairment of the marital relationship was temporary and was resolved by the time of trial. Given the inconsistencies in the record and the relatively small impact the disabilities have made on Pomije's lifestyle, the jury's award of moderate general damages and denial of award for loss of consortium, arrived at only after a substantial number of hours of deliberation, are not palpably contrary to the weight of the evidence.

■ 2. The Pomijes next assert that the damage award in the verdict is so inadequate as to indicate that it was given under the influence of passion and prejudice. This argument, too, is without merit.

The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed.

*LaValle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977) (citing *DeWitt v. Schuhbauer*, 287 Minn. 279, 177 N.W.2d 790 (1970)).

Much of the medical testimony at trial was in conflict, especially that testimony directed to the rotator cuff injury. Pomije's testimony was also inconsistent. The trial court did not err in denying a new trial on the grounds that the jury was influenced by passion and prejudice.

3. Explaining the concept of damages to the jury, the trial court prefaced its remarks by stating:

> Now, the damages we are talking about have to be awarded in money or money's worth. *If some element of the harm that a person claiming damages shows to the trier of fact, the injury is of such a character that it can't be reduced to money or money's worth, then the law of damages has no answer.* It's not a perfect instrument; only those things which are provable and reducible to money can, in the context of a personal injury case, be awarded in damages.

(Emphasis added by appellant.)

After describing and defining general damages, the trial court stated:

> Then, *if you feel those things can be put in terms of money, or money's worth,* consider how much you should allow for the period of time to which he has been subjected to them from February 17, 1978 to now.

(Emphasis added by appellant.)

Finally, after describing loss of consortium, the court instructed the jury:

> Has the evidence shown you that Helen Pomije has lost assistance and some of the companionship that she formerly had with her husband, Donald, before the accident of 1978 and as a result of what happened in that collision? A related concept to this is whether the quality of their relationship has been deteriorated in any significant way as a result of what happened on February 17, 1978. Any such change must be proved to have resulted from that collision. If you think such a change occurred, but you can't relate it to what happened in February of 1978, then you can't consider it within your answer to this question. If you are satisfied that there were such changes and that they were caused by the collision, *then you must decide whether you are able to assign monetary value to them.* If you can, you can make an appropriate allowance for that aspect * * *.

(Emphasis added by appellant.)

Minnesota Rule of Civil Procedure 51 requires that an objection to jury instructions for misstatements or omissions in the charge be made before the jury retires to consider its verdict. The Pomijes' counsel, even upon direct inquiry of the court, made no objection to the jury instructions at that time. He was also afforded an opportunity to review the court's instructions prior to the charge to the jury and he made no objection.[2]

Rule 51 also provides that an error in the instructions with respect to fundamental law or controlling principle may be assigned for the first time in a motion for a new trial. Consistent with this provision, the Pomijes assert the underscored portions of the jury instructions constitute an error of fundamental law.

■ Only where an error in the instructions to a jury destroys the substantial correctness of the charge as a whole, causes a miscarriage of justice, or results in substantial prejudice on an issue vital in the litigation will the error be treated as fundamental and require a new trial without timely objection or notice. *Clifford v. Peterson*, 276 Minn. 142, 145, 149 N.W.2d 75, 77 (1967).

■ The Pomijes contend that the court's instructions improperly led the jury to believe that it must decide whether a loss can be reduced to a monetary value, and that it might find a loss but not award a monetary value therefor when valuation is difficult.

Unquestionably, the challenged sentences inappropriately expand upon the relevant instructions in the Jury Instruction Guide. However, the critical question is whether the challenged language so destroyed the correctness of the charge as a whole as to rise to the level of fundamental

**2.** It is unclear from the record whether the challenged portions of the instructions were extraneous remarks by the court added at the time of the charge or contained within the instructions reviewed by counsel.

error, cause a miscarriage of justice, and substantially prejudice the Pomijes. *See Hughes v. Quarve & Anderson Co.,* 338 N.W.2d 422, 426 (Minn.1983). We conclude that it did not. A review of the jury charge in its entirety reveals that the court properly defined the word "damages," instructed on past and future damages, and on damages for both past and future pain, suffering, and emotional distress. Taken as a whole and having in mind the particular evidence of this case, we do not find that the jury was misled. *Stall v. Christensen,* 277 Minn. 71, 151 N.W.2d 764 (1967). The trial court did not err in denying a new trial on the grounds of erroneous jury instructions.

### DECISION

1. The jury's award of damages is not palpably contrary to the evidence.

2. The trial court did not err in denying appellants' motion for a new trial on the grounds that the verdict was given under the influence of passion and prejudice.

3. The trial court did not err in denying appellants a new trial based on error in the court's jury instructions.

Affirmed.