HENRY L. TRIMBLE v. LAKE SUPERIOR & PUGET SOUND COMPANY
and Others. [1]

July 20, 1906.

Nos. 14,814—(149).

**Action to Quiet Title—Right to Maintain.**

> A tenant of the buildings situated on land held under a lease by another party does not, by accepting a lease of the land from a stranger before the expiration of his lease, without the consent of his landlord or the lessee of the land, place the stranger in possession of the land so as to enable him to maintain an action to quiet title.

Action in the district court for Clay county to determine the adverse claims of defendants to land alleged to be in plaintiff's possession. The case was tried before Baxter, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant Christopher Burns appealed. Reversed.

*Edwin Adams* and *F. H. Peterson,* for appellant.

*C. A. Nye* and *G. Halvorsen,* for respondent.

ELLIOTT, J.

This is an appeal from an order denying a motion for a new trial. The action was brought by Henry L. Trimble against the Lake Superior & Puget Sound Company and all other persons and parties unknown claiming any right, title, or interest in the property described in the complaint. The company did not appear, but an answer was interposed by Christopher Burns which denied the claim of title asserted by the plaintiff and alleged that said Burns was in possession of the premises when the action was brought, and that he had acquired title thereto by adverse possession. The court found that the plaintiff was in possession of the premises, and that Burns failed to prove his title by adverse possession during the statutory period.

An examination of the record convinces us that the plaintiff was not in possession of the premises when he commenced this action, and that his so-called record title is of no importance, as it rests upon a void

[1] Reported in 108 N. W. 867.

tax judgment. It therefore becomes important to consider the question of the defendant's claim of title by adverse possession only so far as is necessary to disclose the circumstances under which the plaintiff claims to have acquired possession of the land. The land was patented by the government to Josephine M. Jones on May 8, 1874. She deeded the land to the Lake Superior & Puget Sound Company. The taxes of 1879 were not paid, and on September 27, 1881, the county auditor sold the tract with other lands to R. R. Briggs. In 1884 Briggs deeded the land to Mary H. Lewis. Twenty years thereafter, on November 4, 1904, she, for a consideration of $25, quitclaimed the land to the respondent Trimble. Neither Trimble, Lewis, nor Briggs ever paid any taxes on the land, or, so far as the record discloses, was ever in possession. At the trial of this action Trimble attempted to establish his title under the deed from Lewis, but it is now admitted in his brief that the tax judgment was void (Farnham v. Jones, 32 Minn. 7, 19 N. W. 83; Davis v. Carlin, 77 Minn. 472, 80 N. W. 366), and that his right to maintain this action rests upon his alleged possession of the premises when the action was commenced and the failure of the defendant Burns to prove title in himself.

It appears that in the year 1873 Patrick Burns, the father of the defendant Christopher Burns, settled on the one hundred sixty acres of which this eighty acres forms a part. He soon thereafter built a house on the eighty acres in question, and he and his family lived on the land until 1884. In 1883, Patrick Burns, learning that he could not acquire title to the eighty acres in question, turned over whatever rights he had to his son Christopher. Thereafter Patrick Burns acquired title to the north half of the section and made no further claim to the south half, which is the land involved in this action. Christopher Burns claims that he received possession of the land from his father in 1884 and has held continuous possession ever since adverse to all the world. As there must be a new trial it is not necessary for us to determine the correctness of the finding of the trial court upon the issue of adverse possession.

It is, however, evident that during all these years Christopher Burns claimed to own the land and assumed to be in possession of it. From time to time he invested money in improvements and paid the taxes every year as they became due. He lived on the land from 1884 until

1889, when he went to work elsewhere because he could earn more money. During the entire period from 1884 until May 1, 1904, his parents, a sister, and two brothers made their home on the land. Christopher Burns was unmarried. During his absence he corresponded with members of the family, sent them money, and gave instructions as to its expenditure on the land and the care of the place. From 1889 to 1897 Christopher claims that he left the property in charge of his father and his brothers, who by agreement with him were to care for it as his agents. His brother James was in charge for about five years prior to May 1, 1904. In 1898 Christopher remained on the land for six months, and in 1903 he was there for about three months. May 1, 1904, James Burns, acting for Christopher, rented the land to one Brackley and the buildings thereon to one John Peterson for a period of one year. On November 27, 1904, before these leases expired, while Peterson was in possession of the buildings and Brackley of the land upon which they stood, Peterson accepted a lease of the land from Trimble. No change was made in the actual character of Peterson's possession. He continued to live on the land as he had done before he received the lease from Trimble.

These conditions fairly appear from the evidence, and they do not show possession on the part of Trimble. What took place between Trimble and Peterson was a mere paper transaction. A tenant cannot in this way deprive his landlord of possession and place an adverse claimant of the title in constructive possession. An attornment to another without the consent of the landlord does not affect the landlord's possession. Blue v. Sayre, 2 Dana, 213; McCartney v. Auer, 50 Mo. 395; Cobb v. Robertson (Tex. Sup.) 86 S. W. 746; Stover v. Davis, 57 W. Va. 196, 49 S. E. 1023. Burns was in possession by his tenants Brackley and Peterson. Both leases extended until May, 1905. It is true that Brackley did not live on the land, but he cultivated it during the season and had control over it until the end of his lease. A lease can be terminated only by mutual agreement between the lessor and lessee, or by some act of the party against whom it is claimed inconsistent with the continuance of the term and the validity of which he is estopped to deny. Nelson v. Thompson, 23 Minn. 508. Neither Peterson nor Brackley could terminate his lease without the consent of Burns. Brackley does not appear to have attempted to do so, and

Peterson never took the possession of the land away from Brackley. To permit a tenant in possession to affect the claims of rival claimants of the title, by repudiating one landlord and accepting another by a mere paper transaction, would be inconsistent with the well-established principles of the law of landlord and tenant.

The order appealed from is reversed and a new trial granted.