Mary **BRESSON** and Lyle
**Bresson, Appellants,**

v.

Michael F. **STOSKOPH, Respondent.**

No. C2–84–994.

Court of Appeals of Minnesota.

June 25, 1985.

Review Denied Sept. 13, 1985.

Neil A. McEwen, Thief River Falls, for appellants.

Romaine R. Powell, Bemidji, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Mary and Lyle Bresson sued for injuries resulting from an automobile accident. They appeal the jury's special verdict awarding no damages. They also challenge the trial court's admission of medical testimony. We affirm.

## FACTS

Appellant Mary Bresson was involved in a car accident on November 14, 1980. She was taken to the Roseau Hospital emergency room where her left knee was x-rayed. The x-ray showed no injury to the knee.

On November 18, 1980, Bresson was examined by her regular physician, Dr. Allan Janecky. An additional x-ray of the knee showed a small chip fracture of the patella. Later x-rays showed degenerative arthritis in both knees. Dr. Janecky had diagnosed the arthritis on October 23, 1980, three weeks before the accident.

Bresson was eventually referred to Dr. Roger Davis, a specialist in physical medicine and rehabilitation at Grand Forks, North Dakota. His examination of her on May 5, 1981, revealed mottled skin and coolness in her legs, and tenderness and decreased range of motion in her neck. He also diagnosed reflex sympathetic dystrophy in Bresson's legs. It consisted of the sympathetic nerves in Bresson's legs discharging excessively, causing the blood vessels to clamp down.

Bresson first complained to Dr. Davis about her knees on August 24, 1981. Dr. Davis found no instability or weakness in her knees. On September 28, 1982, Bresson again complained to Dr. Davis about her legs. Upon examination, Dr. Davis found extensive osteoporosis, a loss of calcium in the bones. Bresson was admitted to the Rehabilitation Hospital at Grand Forks on October 10, 1982. A series of nerve blocks were administered to relieve the pain in Bresson's legs.

When Bresson was discharged on October 27, 1982, Dr. Davis wrote the following in a discharge summary:

Overall, the patient has done well physically and psychologically. The patient has spoken on several occasions about her pending lawsuit. Even though she's doing well, she has mentioned that a lawsuit is pending and that her condition may worsen in the future. This has given some of us the impression that the patient would like to foster a permanent partial disability. It is my opinion at the

time of the discharge * * * that the patient had no permanent partial disability whatsoever.

Dr. Edwin James, a thoracic and cardiovascular surgeon, examined Bresson on June 20, 1983. His diagnosis confirmed the reflex sympathetic dystrophy. Dr. James testified that it has many possible causes. The usual cause is a trauma of some sort.

Both Dr. James and Dr. Davis testified that Bresson's present problems were related in some way to the accident. However, neither doctor had seen Bresson's prior medical history, and both said they relied on her account of that history. Both doctors also said that if the account was inaccurate, their opinions regarding the cause of Bresson's problems could be in error. Bresson testified that the accident caused all her present physical and emotional problems.

Over Bresson's objection, respondent was allowed to introduce the testimony of two doctors who had treated Bresson prior to the accident. Dr. Robert Bell treated Bresson from 1965 to 1967. He testified he treated her for a variety of illnesses, including headaches, a respiratory tract infection, myositis (an inflammatory muscle reaction) of the legs and depression. Dr. Theodore Holm treated Bresson from 1971 to 1973. On one occasion, Bresson had received a kick just above the ankle. Dr. Holm noticed a large bruise but Bresson refused an x-ray. She later came to him with a sprained ankle and reported stepping on a nail. He also treated her for a variety of illnesses, including pneumonia and "nervousness."

Respondent produced witnesses who testified to seeing Bresson drive, dance and walk without difficulty. One witness testified Bresson's inability to do housework was a product of Bresson's unwillingness to do it and that Bresson would "gimp a little bit more" when someone was watching. Other witnesses testified to Bresson having problems with her knees, neck and head before the accident.

The parties stipulated to some of Bresson's medical expenses at trial. The Ro-

seau Hospital emergency room and associated physician expenses were not included in the stipulation nor were they presented at trial.

The trial court submitted a special verdict to the jury. The verdict questions consisted of the threshold requirements for recovery as set forth in Minn.Stat. § 65B.51, subd. 3 (1980). The jury found that respondent was negligent at the time of the accident, that Bresson was not negligent at the time of the accident, and that Bresson was not damaged, disabled for sixty days or more, or permanently injured as a result of the accident. The jury awarded Bresson no damages.

Bresson requests a new trial.

## ISSUES

1. Does the evidence support the jury's special verdict finding that Mary Bresson had no damages?

2. Was the testimony of Dr. Bell and Dr. Holm relevant?

## ANALYSIS

1.

■ This court set forth the standard for review of special verdict findings in *Olson v. Havir Manufacturing Co. of St. Paul,* 357 N.W.2d 136, 138 (Minn.Ct.App.1984).

On review, an answer to a special verdict question will be set aside only if perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons. * * * If the answers to special verdict questions can be reconciled on any theory, the verdict will not be disturbed.

Expert testimony is not conclusive upon a jury. *Nemanic v. Gopher Heating and Sheet Metal, Inc.,* 337 N.W.2d 667, 670 (Minn.1983).

■ Medical testimony shows that Mary Bresson had reflex sympathetic dystrophy of her legs in 1981. This condition could be produced by trauma, and her left knee was hurt in the 1980 accident. However, other

evidence raises significant questions about the seriousness of the disorder, its cause, and the relevance of other injuries and diseases to explain her alleged disabilities.

The jury heard non-medical testimony that appellant had no impairment. Her own medical witness reported that his patient wished to foster a disability.

Bresson's original injury was apparently slight. She hurt her left knee, but nine months passed before she complained again of a problem with the knee; then she pointed out a problem with both knees.

Dr. Janecky diagnosed degenerative arthritis three weeks before the accident. He also diagnosed degenerative arthritis in both knees two months after the accident. Testimony also showed earlier leg discomfort and ankle and leg injuries.

The jury awarded no damages for the Roseau Hospital emergency room expenses or pain and suffering resulting from the accident. Bresson did not introduce any evidence showing the emergency room expenses. Although there appeared to be some injury resulting from the accident (the chipped patella), there was too little proof about its significance to mandate a finding of compensable damages.

We uphold the jury's special verdict since it is not perverse and palpably contrary to the evidence.

### 2.

 The trial court's decisions on relevancy objections will not be reversed unless there is an abuse of discretion. *Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972). Rule 401 of the Minnesota Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Minnesota Supreme Court stated "any evidence is relevant which logically tends to prove or disprove a material fact in issue." *Boland v. Morrill*, 270 Minn. 86, 98–99, 132 N.W.2d 711, 719 (1965).

Bresson opened the door for the testimony of Dr. Bell and Dr. Holm by testifying that all her present problems, emotional and physical, were caused by the accident. Since these doctors' testimony tended to prove Bresson had a history of related problems, the trial court properly admitted their testimony.

### DECISION

We uphold the jury's special verdict in light of the evidence. The trial court did not abuse its discretion by admitting the testimony of Dr. Bell and Dr. Holm.

Affirmed.