**Olga RUD, Appellant,**

v.

**Raymond FLOOD, Respondent.**

**No. C8–85–1724.**

Court of Appeals of Minnesota.

April 15, 1986.

Paul A. Strandness, Logan N. Foreman, III, Eckman, Strandness & Egan, P.A., Minneapolis, for appellant.

Patrick S. Scallen, Salmen & Von Feldt, St. Paul, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Olga Rud commenced this action against Raymond Flood to recover damages for injuries sustained as a result of an automobile collision. Flood admitted fault and the sole issue for the jury was the extent of damages sustained by Rud. Rud appeals from the jury's special verdict finding that she did not sustain a permanent injury. She also challenges the jury's award of damages. We affirm.

## FACTS

While stopped in her car on the shoulder of Crosstown Highway 62 on December 9, 1982, appellant Olga Rud was struck from behind by an automobile driven by respondent Raymond Flood. Respondent admitted fault.

As a result of the collision, appellant was rendered unconscious and was taken by ambulance to the emergency room at Fairview-Southdale Hospital. She remained in the hospital for approximately five days, during which time she suffered pain in her neck, upper back, and right shoulder. Dr. Jose Abullarade, appellant's family physician, examined and diagnosed her condition as a severe strain of the cervical and thoracic spine. He observed muscle spasms

and a contusion on the right shoulder and began treatment consisting of analgesics, hot packs, and bed rest. He prescribed a cervical collar, which appellant wore for three months following her release from the hospital.

At the time of the accident, appellant was eighteen years old and in excellent health, with no history of prior neck or back problems. As a result of her injuries, she was unable to work regularly at her job from December 9, 1982 through February 1983. For eight months following the accident, appellant made numerous visits to Dr. Abullarde for treatment of pain and discomfort in her neck and lower back. He told her to continue with her previously prescribed course of treatment and to be as active as her pain would allow. Dr. Abullarde testified at trial that appellant's injuries were permanent.

On August 24, 1983, appellant sought treatment from Dr. William Ashford, a licensed doctor of chiropractic at the Ashford-Wildenauer Chiropractic Clinic in Columbia Heights. Dr. Ashford diagnosed cervical cranial syndrome and cervical, thoracic, and lumbar myofascial syndrome. Appellant's treatment, which consisted of electrical muscle stimulation and ultrasound treatments, continued on a regular basis through September 20, 1984. She was also told to use cold packs and a special cervical pillow. Dr. Ashford testified that appellant had sustained permanent impairment to the spine and supporting soft tissue structures.

Appellant continued to suffer from head, neck, and back pain. On October 16, 1983, she entered the emergency room at Unity Hospital in Fridley. The attending physician diagnosed cervical muscle spasms and prescribed heat treatments and an analgesic.

On October 1, 1984, appellant sought help from Dr. Jack E. Hubbard, a board-certified neurologist with the Minneapolis Clinic of Psychiatry and Neurology. Dr. Hubbard testified at trial that appellant was suffering from musculoligamentous strain to the cervical region and that the injuries were permanent. Dr. Hubbard prescribed a transcutaneous electrical neurostimulator unit, analgesics, a physical therapy program, and a home traction unit. Appellant presently remains under his care.

At trial, appellant introduced testimony from lay witnesses that appellant's work endurance and physical abilities had been significantly diminished since her accident. Appellant also introduced evidence of medical expenses totaling $5,388.20.

By special verdict, the jury determined that appellant did not sustain a permanent injury as a result of the accident and did not sustain a disability for sixty days or more. The jury awarded appellant $1,170.95 for medical expenses and $1,000 for general damages. By operation of Minn.Stat. § 65B.51, subd. 3 (1984), she failed to meet the threshold requirements and therefore recovered nothing. The trial court entered an order for judgment and denied appellant's motion for a new trial.

## ISSUES

1. Was there sufficient evidence to support the jury's finding that there was no permanent injury?

2. Do the damages awarded demonstrate speculation, conjecture, and prejudice by the jury?

## ANALYSIS

1. The scope of review of a trial court's denial of a motion for new trial is narrow.

> [T]he question of whether a verdict is adequate must be addressed in the first instance to the sound discretion of the trial court, and its action shall be reversed on appeal only if an abuse of discretion can be demonstrated.

*Williamson v. Furch*, 304 Minn. 558, 558–59, 229 N.W.2d 39, 40 (1975). An answer to a special verdict question will be set aside only if "perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Olson v. Havir Manufacturing Company*

*of St. Paul,* 357 N.W.2d 136, 138 (Minn.Ct. App.1984).

Non-economic loss is recoverable under our No-Fault Act only if the injured party satisfies one of the tort thresholds of Minn. Stat. § 65B.51, subd. 3 (1984). The tort thresholds include permanent disfigurement, permanent injury, death, or disability for sixty days or more. Minn.Stat. § 65B.51, subd. 3(b). Appellant argues that she met the burden of proof by introducing uncontradicted medical proof from all three treating doctors that her injuries were permanent.

Appellant relies on *Williamson,* 304 Minn. 558, 229 N.W.2d 39. In that case, the plaintiff claimed injuries to his head, neck, shoulder, spine, and back as a result of a car accident. Numerous treating physicians either testified as witnesses for the plaintiff or submitted medical records. The trial court directed a verdict for the plaintiff on the issue of liability and submitted the question of damages to the jury. The jury awarded no damages to the plaintiff. The Minnesota Supreme Court held that because there was no conflicting medical evidence regarding causation, a verdict of no damages could not be sustained. *Id.* at 559, 229 N.W.2d at 40.

 We reject appellant's contention that the jury in the present case was bound to accept the experts' testimony. There is no requirement that defendants in a personal injury action introduce their own medical experts to refute the claim of injury if this can be accomplished by cross-examination of the experts and by reference to the medical records. In *Krueger v. Knutson,* 261 Minn. 144, 111 N.W.2d 526 (1961), the plaintiff similarly argued that testimony by the only medical expert regarding the injuries sustained was conclusive on the jury because the defense offered no opposing medical testimony. *Id.* at 158–59, 111 N.W.2d 526, 536 (1961). The supreme court disagreed, reasoning as follows:

> It must be assumed that the jury gave consideration to [the doctor's] testimony and recognized that there was no opposing medical testimony and that the trial court had these factors in mind both during the course of the trial and upon the arguments in support of the motions for a new trial. It was the prerogative of the jury to give full consideration to the medical testimony, but the jury was not conclusively bound to accept in every detail the medical testimony submitted.

\* \* \* \* \* \*

> Medical experts are permitted to give their opinions upon the very issue which the jury will have to decide, but such opinions are not conclusive unless so positive as to exclude all doubt as to the matter on which they are given and unless based on testimony which is positive, consistent, unimpeached, and uncontradicted. Where the opinion does not exclude other possibilities or is not based on such testimony, its weight is for the jury.

*Id.* at 159, 111 N.W.2d at 536; *see Nemanic v. Gopher Heating and Sheet Metal, Inc.,* 337 N.W.2d 667, 670 (Minn.1983) (jury not bound to accept expert opinion even in absence of adverse expert); *Bresson v. Stoskoph,* 370 N.W.2d 80, 82 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. Sept. 13, 1985).

Although respondent admits that appellant's experts never altered their opinions regarding permanency, it is respondent's position that through cross-examination he showed that appellant, at most, suffered a short-term irritation to her neck and back. Dr. Abullarade, the family physician, noted in his record approximately two weeks after the accident that appellant had full motion in her neck, her back was normal, and she had "little pain." He allowed appellant to return to her work, which he admitted required bending. Dr. Abullarde made no written finding of muscle spasms after respondent was discharged from the hospital. He saw appellant as recently as April 5, 1985, January 8, 1985, and November 9, 1984, and testified that on each occasion there was no complaint of back or neck discomfort. Dr. Abullarde never referred appellant to either a neurologist or an or-

thopedist. He testified without reviewing the records of Dr. Hubbard or Dr. Ashford that appellant had a permanent injury.

Dr. Ashford testified that in the sixteen months he treated appellant at his chiropractic clinic, he saw her 50 times, charged a minimum of $44.00 per visit, and for the most part performed the same treatment at each visit. Even though there was no progress, he never consulted a medical doctor or reviewed any of her medical records. Respondent argues that this treatment probably was viewed as excessive and unnecessary by the jury because the jury disallowed recovery for Dr. Ashford's entire medical bill.

Respondent also argues that he successfully impeached appellant through cross-examination. Respondent contends that the jury may have determined that appellant's complaints dealt with emotional stress and tension related to work and not to the injuries sustained in this accident. In addition, appellant testified that she failed to continue in the physical therapy program advised by Dr. Hubbard and that she had danced approximately four times each month over the two months prior to trial. Finally, respondent argues that appellant's credibility suffered greatly when she testified that on a car trip to Toronto two years after the accident, she had to stop every ten or fifteen minutes to stretch and stand.

We uphold the jury's special verdict because it is not perverse and palpably contrary to the evidence. The injuries complained of were admittedly "soft tissue" in nature, making objective evidence of permanency difficult to obtain. Consequently, the jury was forced to base its determination on the complaints of appellant, which the jury could choose to disbelieve.

■ 2. Appellant's second argument is that because the jury improperly decided the issue of permanency, the jury failed to award adequate damages. Appellant contends that it presented evidence to the jury to substantiate medical expenses totaling $5,388.20. Although respondent did not offer evidence to dispute these expenses, the jury awarded $1,170.95 for medical ex-

penses, no future damages, and $1,000 for general damages. The trial court noted in its order and memorandum denying appellant's motion for new trial that the special damage award coincided with a disallowance of the stipulated billings from the Chiropractic Clinic, Unity Medical Center, and the Minneapolis Clinic.

This court has recently stated that a damage award that is less than proven special damages may be overturned as the product of passion or prejudice. *Heroff v. Metropolitan Transit Commission*, 373 N.W.2d 355, 357 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Nov. 18, 1985). Nevertheless, the resolution of the previous issue may be determinative of this issue.

"The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse."

*Wefel v. Norman*, 296 Minn. 506, 508, 207 N.W.2d 340, 341 (1973) (quoting *Sell v. Milwaukee Automobile Insurance Co.*, 17 Wis.2d 510, 519, 117 N.W.2d 719, 724 (1962)).

We believe that the damage award was not the result of passion and prejudice. The jury was free to find that appellant's chiropractic, neurological, and emergency treatment more than eight months after the accident was unnecessary. The jury obviously believed respondent's theory that appellant suffered a short-term irritation to her neck and back. We find no abuse of discretion in the trial court's denial of a new trial.

**DECISION**

There was sufficient evidence to support the jury's finding of no permanent injury and the jury's award of damages.

Affirmed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. While a jury is not required to accept uncontradicted testimony if it is improbable or if surrounding facts and circumstances provide reasonable grounds for doubting its credibility, *Waite v. American Family Mutual Insurance Co.*, 352 N.W.2d 19, 22 (Minn.1984), it is equally true that a jury cannot arbitrarily reject "the unanimous opinion of * * * qualified experts, based upon uncontradicted facts * * *." *Kundiger v. Prudential Insurance Co.*, 219 Minn. 25, 29, 17 N.W.2d 49, 52 (1945) (citation omitted). *See also Fidelity Bank and Trust Co. v. Fitzimons*, 261 N.W.2d 586, 590 (Minn. 1977) (a "jury cannot disregard the positive testimony of an unimpeached witness without a reasonable ground for doing so"). Here, the unanimous and uncontradicted testimony of three medical experts indicates that Olga Rud sustained permanent injuries. No reasonable doubt or fact issue was created by adverse medical testimony or through the cross-examination of Rud's three experts. Thus, I conclude that the jury's verdict is perverse and palpably contrary to the evidence, and that the trial court abused its discretion in denying Rud's motion for a new trial. Accordingly, I would reverse and remand for a new trial to determine the appropriate amount of damages.