PROVIDENT MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

TACHTRONIC INSTRUMENTS,
INC., Respondent.

No. C1–86–568.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Daniel J. Biersdorf, Jeff Ross, Estes, Parsinen & Levy, P.A., Minneapolis, for appellant.

Scott K. Goldsmith, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Robert O. Straughn, Elizabeth W. Vobach, O'Connor & Hannan, Minneapolis, for amicus curiae, Building Owners and Managers Ass'n of Minneapolis.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Appellant Provident Mutual Life Insurance Company brought this action against respondent Tachtronic Instruments, Inc. for rent due under a commercial lease. Following an order for judgment incorporating the special verdict returned by the jury, Provident moved for attorney's fees

and both parties made post-trial motions for judgment notwithstanding the verdict or for a new trial.

This appeal is from the judgment entered following the trial court's denial of these motions in most respects. Tachtronic has filed a notice of review, and an amicus curiae brief has been filed in support of Provident's appeal by the Building Owners and Managers Association of Minneapolis, an association of real estate owners and managers who routinely lease commercial property. We affirm in part, reverse in part and remand.

## FACTS

Tachtronic, a small Minnesota corporation engaged in the design and manufacture of high precision rotation components and small motors, leased office and warehouse space in a building owned by Provident and managed by Welsh Companies, Inc. The three-year lease ran until October 31, 1985, and required Tachtronic to make monthly payments of $2,463 in addition to a percentage of the building's overall real estate taxes and monthly operating expenses. Tachtronic was in default within the first year of tenancy.

Provident commenced a series of unlawful detainer actions against Tachtronic beginning in the fall of 1983, alleging nonpayment of rent as the sole basis for eviction. The first action was stricken from the court's calendar when a portion of the rent due was paid by Tachtronic. The second action was stricken and closed on January 23, 1984, when Provident failed to appear at the hearing.

Provident commenced a third unlawful detainer action in February 1984. By this time, Tachtronic had already moved most of its operation out of the premises. Mark Troxell (the property manager at Welsh) filed an affidavit stating that he believed Tachtronic was not in the state and could not be found. Welsh served notice by posting the summons and complaint on the door of the leased premises, even though Troxel knew that Tachtronic could be reached at its home offices in New Ulm, Minnesota.

Tachtronic thus had no notice of the unlawful detainer hearing and on February 23, 1984 a default judgment for restitution was entered against it.

Tachtronic first learned of that default judgment when Welsh phoned a few days later to arrange a meeting at the premises for March 1, 1984. At that meeting, the parties inspected the premises. Tachtronic removed its remaining possessions, broom swept the space, and turned over its keys.

Immediately after the property was vacated by Tachtronic, Welsh made attempts to re-let the premises. It entered into negotiations with another tenant in the building and allowed this tenant to use the premises without charge for several months. A lease was entered with occupancy to begin in November 1984 and with the first full rent payment due three months later on February 1, 1985. This new lease provided a monthly rent in excess of Tachtronic's and a term longer than that remaining on the Tachtronic lease.

Provident commenced this action in June 1984 to recover the rent due before Tachtronic vacated the premises on March 1, 1984 and the rent due and payable for the remainder of the lease. Following a four-day trial, the jury returned a special verdict finding that the Tachtronic lease was terminated on or before March 1, 1984; that Provident consented to vacation of the premises; that Provident did not fail to take reasonable action to re-let the premises; and that $15,235.25 plus 18 percent interest would adequately compensate Provident for its losses.

In response to post-trial motions by both parties, the trial court determined that based on a $23,000 offer of judgment by Tachtronic on February 13, 1985, Provident was not entitled to recover its costs, disbursements, or attorney's fees after that date and that Tachtronic was entitled to its costs and disbursements after that offer was made. The trial court further determined that Tachtronic's claims for malicious prosecution and for attorney's fees should be dismissed with prejudice. The

parties' remaining post-trial arguments were rejected, and judgment was entered. This appeal followed.

## ISSUES

1. Are the jury's findings justified by the evidence and consistent with the terms of the lease?

2. Did the trial court improperly deny attorney's fees and costs to Provident?

3. Did the trial court err in concluding that Provident is not collaterally estopped by its previous unlawful detainer actions?

4. Did the trial court improperly dismiss with prejudice Tachtronic's counterclaim for malicious prosecution and its claim for attorney's fees?

## ANALYSIS

### I

*Termination of lease*

■ Jury verdicts are entitled to great deference:

> It is well settled that we will set aside an answer to a special verdict question only when it is perverse and palpably contrary to the evidence. A jury verdict will be overturned only if no reasonable mind could find as did the jury. If the answers to the special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed. * * * [the jury's] decision will stand unless manifestly contrary to the evidence viewed as a whole and in the light most favorable to the verdict.

*Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984) (emphasis in original) (citations omitted). Under this standard, the evidence presented to the jury amply supports its determinations that the lease was terminated and that Provident consented to vacation of the premises by Tachtronic.

■ A lease may be terminated by express agreement or by implied agreement (sometimes called termination by operation of law), termination by estoppel, or acceptance of surrender. *See Trimble v. Lake Superior & Puget Sound Co.*, 99 Minn. 11, 108 N.W. 867 (1906). A surrender by operation of law arises from a condition of fact that is voluntarily assumed and that is incompatible with the existence of a landlord-tenant relationship. *Hildebrandt v. Newell*, 199 Minn. 319, 323, 272 N.W. 257, 259 (1937). When, as here, the lease expressly permits re-entry by the landlord, there must be unequivocal proof that the landlord intended to forgive the tenant's further obligations under the lease and accepted the tenant's surrender of the premises. *See Sjoberg v. Hartz*, 199 Minn. 81, 84, 271 N.W. 329, 331 (1937).

■ Provident erroneously asserts that Tachtronic relied entirely on three isolated facts to show acceptance of surrender of the premises: (1) Provident took back the keys from Tachtronic, (2) Provident re-let the space, and (3) Provident did not expressly communicate an intent to terminate the lease and did not respond to Tachtronic's alleged offer of surrender.[1] Provident fails to recognize, however, that along with these facts the jury was presented with other substantial evidence establishing that the parties agreed to terminate the lease on March 1, 1984.

Following entry of the judgment of restitution, Provident specifically requested that Tachtronic vacate the premises, and at the March 1, 1984 meeting, the parties' behavior matched that required under the lease upon its expiration or termination: Tachtronic surrendered the premises "broom clean in good order," removed all of its personal property, and turned over the keys.

Provident's actions after Tachtronic's vacation of the premises further evidenced its intention to treat the lease as terminated. Various expenses such as those for cleaning and changing the locks were charged

---

1. Following its vacation of the premises, Tachtronic had returned the March 1984 rent invoice to Welsh and had requested that Welsh issue a corrected statement of the final charges due. Neither Welsh nor Provident responded to this request.

not to Tachtronic but to Provident; normally under a lease arrangement, the tenant is charged for such expenses. Following Tachtronic's return of the March 1984 invoice for rent payable, no further monthly rental statements were sent to Tachtronic until institution of this action. Finally, the rental card, which was used by Welsh to keep track of rent owed and paid by Tachtronic, revealed that the entry for rent owed in April 1984 had been whited out and that there was a double line (a standard accounting practice indicating closing of an account) drawn under the March entries.

Provident's behavior regarding the subsequent re-letting of the premises further supports the finding that Provident intended to terminate the lease. The evidence suggests that Provident believed that the rent paid by Tachtronic was low and that they wanted to increase the rent. Indeed, it successfully negotiated a subsequent lease with another tenant for the property at a higher rent and for a longer term than remaining on Tachtronic's lease. Prior to execution of this new lease, Provident even gave keys to the future tenant and allowed it to use the property without charge.

Perhaps most importantly, the evidence establishes that Tachtronic's vacation of the premises was a consensual arrangement which Tachtronic clearly understood to be a termination of the lease. Tachtronic's controller Gary Hottman and its president, William Wheaton, both testified that it was their understanding that the lease had been terminated. While Troxel testified to the contrary, the jury was entirely free to question his credibility and reject his testimony.

This case does not, as Provident and the amicus argue, allow a tenant to prove termination by its own unilateral acts and allow it to escape liability without the landlord's acquiescence. The evidence indicates a clear intent on Provident's part, at least initially, to accept Tachtronic's surrender of the premises and terminate the lease. That such conduct later proved unsatisfactory or not as lucrative as first thought does not justify allowing Provident to later allege

the lease had *not* been terminated on the theory that it never expressly acquiesced in Tachtronic's surrender of the premises. Based upon the evidence submitted, the jury could reasonably find that the parties intended to terminate the lease on March 1, 1984 and that Provident consented to Tachtronic's vacation of the premises on that date.

*Damages*

■ Damages were awarded covering the period prior to March 1, 1984, plus 18 percent interest pursuant to the terms of the lease. Provident contends that as a matter of law the jury's award of damages is inadequate and inconsistent with the jury's finding that Provident acted reasonably in re-letting the premises. Under Minnesota case law, even when a lease has been terminated the landlord is entitled to an amount equal to the "damages resulting from the breach with the attendant obligation upon the [landlord] to use reasonable efforts to mitigate such damage subsequent to the breach." *Gruman v. Investors Diversified Services, Inc.,* 247 Minn. 502, 508, 78 N.W.2d 377, 381 (1956) (citing *Newberg v. Conley,* 190 Minn. 459, 252 N.W. 221 (1934).

■ The lease here, however, provides that in the event of termination the landlord is entitled to the cost of recovering the premises, reasonable attorney's fees, and the rent set by the lease which exceeds the "then reasonable rental value" of the premises for the remainder of the term. Provident admitted through the testimony of Troxel that the market value of the premises exceeded the rent required under the lease. The jury could thus properly find that Provident's post-termination damages were zero.

The cases cited by both Provident and the amicus regarding damages when a landlord mitigates are based on situations where the tenant's abandonment of the property has not been accepted by the landlord or where the landlord re-entered the property upon default without a termination. As found by the jury, that is not the situation here. Under the express

terms of the lease, Provident was entitled to certain damages even upon termination; under the facts as found, however, the jury could conclude that those damages were nonexistent. The jury's finding that $15,235.25 would adequately compensate Provident for its losses is consistent with the lease and with the evidence presented.

## II

Provident contends that the trial court erred in denying its motion for attorney's fees, in awarding Tachtronic its costs and in denying Provident the same. The trial court's decision to deny fees and costs was based on the $23,000 offer of judgment made by Tachtronic on February 13, 1985 in compliance with Minn.R.Civ.P. 68.01.

Rule 68.01 (which was amended and renumbered in 1985 and is now Rule 68) provided in pertinent part:

> If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs and disbursements incurred after the making of the offer.

*Id.*

The purpose of this rule is to encourage settlement of actions. This is accomplished by providing an incentive within the provision that shifts the burden of paying the costs and disbursements to the offeree if the trial outcome is not as favorable as the offer. D. Herr & R. Haydock, 2A *Minnesota Practice* §§ 68.1, 68.3 at 493 (2d ed. 1985).

▇ The trial court here improperly determined that Rule 68.01 precluded Provident's request for attorney's fees. That rule, however, "does not provide a mechanism for shifting the burden of attorneys' fees." *Id.*, § 68.3 at 494.[2] Under the terms of the lease, Provident is expressly entitled to reasonable attorney's fees "for the recovery of rent or any other amount due under the provisions of this Lease

* * *," and these attorney's fees are considered part of its damages upon termination of the lease. Because the jury verdict of $15,345.25 is only a partial measure of damages and must be augmented by attorney's fees, Provident's total damages may exceed the $23,000 offer of judgment; if so, the burden of costs and disbursements was inappropriately shifted to Provident.

The matter is therefore remanded to the trial court for a determination of the amount of attorney's fees incurred by Provident. In this regard, the trial court may consider the February 1985 offer of settlement as it might affect the issue of attorney's fees. After determining the reasonable attorney's fees to which Provident is entitled, the trial court should then determine whether Provident's total damages exceeded the $23,000 offer of judgment.

## III

On review, Tachtronic contends that the trial court erred in failing to apply collateral estoppel based upon Provident's prior unlawful detainer actions and, accordingly, to bar Provident from claiming rent for August through October 1983 (totaling $5,752.36). The first unlawful detainer action, claiming rent for August through October 1983, was stricken from the calendar after Tachtronic made a partial payment; the second action claimed rent for the same period and was stricken when Provident failed to appear.

▇ We agree with the trial court that collateral estoppel effect should not be given to these prior unlawful detainer actions, which were administratively dismissed without hearings. There was no final judgment and no actual litigation of the issues. *See Ellis v. Minneapolis Commission on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982) (giving collateral estoppel effect to a prior unlawful detainer action under a

---

2. Herr and Haydock note that Rule 68 is not a widely-used device to encourage settlement and that if it did permit a party to avoid paying attorneys' fees, it would see greater use. Indeed, "[t]he Advisory Committee recommending the 1985 amendment to the rule considered including attorneys' fees within the operation of the rule, but determined that radical change was not desirable." D. Herr & R. Haydock, 2A *Minnesota Practice* § 68.3 at 494–95 (2d ed. 1985).

"unique" fact situation in which the unlawful detainer action presented the parties a full and fair opportunity to litigate the particular issue).

## IV

■ Finally, Tachtronic contends on review that the trial court erred in dismissing with prejudice its request for attorney's fees under Minn.Stat. § 549.21 and its counterclaim for malicious prosecution based on Provident's continued assertion of a claim for rent after the lease was terminated.[3] In dismissing both claims with prejudice, the trial court merely noted that "[t]here should be an end to these proceedings" and that "[t]he jury was fair to both sides."

Because Tachtronic was not given the opportunity to be heard on these issues, dismissal of the claims with prejudice was inappropriate. We conclude that the claims should have been dismissed *without* prejudice and instruct that the judgment should be changed accordingly.

## DECISION

The evidence fully supports the jury's determination that the lease had been terminated and the jury's award of damages.

The trial court erred in denying Provident its reasonable attorney's fees by applying Minn.R.Civ.P. 68.01; this matter is therefore remanded to the trial court for reconsideration.

The trial court properly determined that a portion of Provident's claim for rent due was not collaterally estopped by prior unlawful detainer actions.

The trial court improperly dismissed with prejudice Tachtronic's claim for attorney's fees and its counterclaim for malicious prosecution; upon remand, the judgment should be amended to dismiss these claim without prejudice.

Affirmed in part, reversed in part and remanded.

3. This counterclaim had been severed from the main action prior to trial.