**Susan B. GALE, Appellant,**

v.

**Phillip Edward HOWARD, et al., Respondents.**

**No. C4–87–509.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

Stuart E. Gale, Bloomington, for Susan B. Gale, appellant.

Mark Gwin, Minneapolis, for Phillip Edward Howard, et al., respondents.

Heard, considered and decided by NORTON, P.J., and MULALLY* and LOMMEN,* JJ.

## OPINION

MULALLY, Judge.

This appeal is from an order denying appellant's motion for a new trial or judgment notwithstanding the verdict. By special verdict, the jury found appellant had not sustained a permanent injury as a result of an automobile accident with respondent. Because appellant failed to cross the no-fault tort threshold, judgment was entered for respondent.

Appellant claims a new trial should have been granted because the jury's verdict was not supported by the evidence and insufficient damages were awarded under the influence of passion or prejudice. We disagree and affirm.

## FACTS

On July 8, 1982, appellant Susan Gale, while driving on the highway, was hit from the rear by a semi-tractor trailer owned by McFarland Truck Lines and operated by Phillip Howard. The force of the impact threw appellant's head back and to the right, and her left knee was slammed into the car door.

Appellant sought treatment from her family physician. Upon examination she

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

had full range of motion in her neck and back, her reflexes were normal, and the X-rays showed no bone abnormalities. Appellant returned to work eleven days after the accident.

Appellant saw the doctor again in September 1983. She was experiencing pain in her neck after sitting for long periods of time. Her physical examination, again, was normal. On a subsequent visit, she complained of intermittent numbness extending down her right arm. An electromyogram (EMG) was conducted to check for a pinched nerve in her neck. The result of the test was normal.

At trial, her physician testified appellant had a chronic cervical strain (neck muscle injury) as a result of the accident. He said an X-ray could not detect a muscle stretch or tear and, in his opinion, she had sustained a permanent injury. He further testified that the symptoms would continue in the future and affect the quality of appellant's life.

On cross-examination, the doctor acknowledged that his opinion as to permanency was based on appellant's subjective complaints over time. He stated that the only actual objective finding he made during an examination was slight tenderness in her neck.

Due to her continued discomfort, appellant was referred to an orthopedist. That doctor testified appellant had the symptoms of a cervical strain, but there were no objective findings upon examination. He stated that in his opinion she had not sustained a permanent injury as a result of the accident and there was no need to restrict her activities.

At the request of her attorney, appellant was treated by a neurologist. She complained of neck soreness and tightness. The examination revealed some mild muscle spasm and mild limitation of motion in her neck. A CT scan was performed to check for a ruptured disk, but results were normal.

The doctor diagnosed appellant as having chronic cervical strain syndrome caused by the car accident. It was his opinion that her injury was permanent, and she would continue to suffer from muscle strain flare-ups periodically.

Appellant is currently a full time student of veterinary medicine, and works as a technician at a veterinary hospital. She testified that her capacity to sit through classroom lectures and her ability to study has been diminished due to her discomfort. However, she is not planning on quitting school, nor did she stop working because of the injury. She continues to play french horn in several different bands, but experiences tension and pain in her neck and shoulders after a short amount of time. Appellant also continues to play softball, and occasionally racquetball and tennis, but suffers pain afterwards.

By special verdict the jury determined respondents were 100% negligent and appellant did not sustain a permanent injury. The jury awarded appellant $1,800 for medical expenses and $5,000 in negligent and appellant did not sustain a permanent injury. The general damages. Because she failed to cross the no-fault tort threshold, the trial court entered judgment for respondents.

## ISSUES

1. Was there sufficient evidence to support the jury's finding that appellant did not sustain a permanent injury?

2. Was the jury's damage award the product of passion or prejudice?

3. Is appellant entitled to judgment for basic economic loss benefits?

## ANALYSIS

### I.

*Scope of review*

The scope of review of a trial court's denial of a motion for a new trial is narrow. The trial court's decision should be reversed only for a clear abuse of discretion. A motion for judgment notwithstanding the verdict will be denied as long as there is any competent evidence reasonably tending to support the verdict. *Johnson v. Alford & Neville, Inc.*, 397 N.W.2d 591, 592 (Minn.

Ct.App.1986). The evidence must be reviewed in a light most favorable to the verdict. *Id.*

An answer to a special verdict question will be set aside only if "perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Rud v. Flood,* 385 N.W.2d 357, 359 (Minn. Ct.App.1986), (quoting *Olson v. Havir Manufacturing Co. of St. Paul,* 357 N.W.2d 136, 138 (Minn.Ct.App.1984)).

*Finding of no permanent injury*

Appellant argues the finding of no permanent injury is palpably against the weight of the evidence and the trial court committed prejudicial error by denying appellant a new trial. Appellant asserts that two of the doctors testified the injury was permanent. Furthermore, each doctor testified that it was impossible to ascertain the full extent and presence of a muscle tear.

■■■ There is no requirement that a defendant introduce medical testimony to refute the claim of injury if it can be accomplished by cross-examination. *Rud,* 385 N.W.2d at 360. Medical experts may give their opinions on the very issue which the jury will have to decide, but those opinions are not conclusive unless they exclude all doubt regarding the particular matter. *Id.* Furthermore, the expert opinions must be based on testimony which is positive, consistent, unimpeached, and uncontradicted. *Id.* Therefore, if the opinion leaves other possibilities open, or is not based on consistent and unimpeached testimony, its weight is for the jury.

The injuries complained of were admittedly "soft tissue" in nature, making objective evidence of permanency difficult to obtain. Consequently, the jury was forced to base its determination on the complaints of appellant, which the jury could choose to disbelieve.

*Id.* at 361.

■■ Based upon the evidence, the jury could have found no permanent injury. All three physicians testified they were unable to discover any objective findings to sub-

stantiate an injury. Moreover, appellant had full range of motion in her neck, was an active full-time student, and had several different jobs since the accident. Therefore, the doctors' opinion and appellant's own testimony on the limitations of her activities, were impeached on cross-examination. The contradiction between appellant's active life style and the allegation of permanency, was for the jury's assessment.

### II.

*Inadequacy of damages*

The jury awarded appellant $1800 for medical expenses, no future damages, and $5000 in general damages. Appellant claims the amount awarded was contrary to the weight of the evidence and the result of bias or mistake.

■■ Awarding a lesser amount than the stipulated medical expenses is not necessarily inadequate. The test is whether the award is so inadequate that it could only have been rendered on account of passion or prejudice. *Flanagan v. Lindberg,* 404 N.W.2d 799, 800 (Minn.1987). Therefore, a lesser award would not be conclusively inadequate as a matter of law.

The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed.

*LaValle v. Aqualand Pool Co. Inc.,* 257 N.W.2d 324, 328 (Minn.1977).

■■ We find no clear abuse of discretion in the trial court determining the damage award to be adequate. The verdict amount was $6.00 less than the amount testified to as medical expenses during trial. It was within the province of the jury to ascertain which medical bills, and what amount, were causally related to the accident. In addition, not awarding future damages was consistent with the finding of no permanency.

Appellant claims the biased verdict was the result of defense counsel's misconduct. According to appellant, defense counsel implied wrong-doing to the jury with comments regarding her family physician being her medical expert, and the fact she retained her father as her attorney.

■ Eliciting testimony regarding the relationship between appellant and her expert witnesses was not improper conduct on the part of defense counsel. Appellant should not be shielded from ordinarily proper questions simply because her father was her attorney. We do not believe such questions would result in the jury acting under the influence of passion or prejudice in awarding damages.

### III.

*Economic loss benefits*

■ Appellant claims she is entitled to basic economic loss benefits because she has an obligation to reimburse her insurer to avoid duplicate payments. Appellant's implication that she is in some way required to commence this law suit in order to protect her insurer's interest, is contrary to Minnesota law. The decision to bring suit is solely in the hands of the insured. *Home Mutual Insurance Co. v. Dean,* 367 N.W.2d 568, 569 (Minn.Ct.App.1985). The no-fault act provides, in part:

> No reparation obligor shall include in its contract any provision which would require a person to commence a negligence action as a condition precedent to the payment of basic economic loss benefits or which permits the reparation obligor to determine whether such an action will be commenced.

Minn.Stat. § 65B.53, subd. 6 (1986).

Under the no-fault act, appellant's carrier has a right of indemnity against respondent's reparation obligor for any benefits paid. Minn.Stat. § 65B.53, subd. 1 (1986). At trial, however, the sole evidence regarded appellant's special medical damages; there was no evidence as to the amount of special damages actually paid by appellant's no-fault insurer. The statutory right of indemnity belongs to appellant's no-fault

carrier, not to appellant herself. Therefore, the insurer may institute its own suit to recover any benefits paid.

### DECISION

The jury's verdict of no permanent injury was not so contrary to the preponderance of the evidence, or the damage award so inadequate, as to require a new trial. The trial court did not abuse its discretion by entering judgment for respondent. Appellant's no-fault carrier may institute its own suit to recover benefits paid as a result of the accident.

Affirmed.