Maria BARRERA, Appellant,

v.

David M. MUIR, et al., Respondents,

David Barrera, Respondent.

No. C7–95–2641.

Court of Appeals of Minnesota.

Sept. 10, 1996.

Review Denied Oct. 29, 1996.

Todd W. Foss, Stefanson, Plambeck & Foss, Moorhead, for Appellant.

Robert M. Light, Alice J. Jensen, Morley, Morley & Light, Ltd., Grand Forks, for Respondents David Muir and Michael Muir.

William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, for Respondent David Barrera.

Considered and decided by WILLIS, P.J., and DAVIES and HOLTAN, JJ.*

## OPINION

WILLIS, Judge.

Maria Barrera appeals from the denial of her motion for a new trial, arguing that expert testimony established that she suffered a permanent injury, thereby precluding the jury's contrary finding. She also argues that the trial court improperly applied Minn. R. Civ. P. 68 in taxing costs. We affirm in part, reverse in part, and remand.

## FACTS

Early in the morning of July 5, 1993, while on her way to work as a farm laborer, appellant Maria Barrera was a passenger in a car

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-pointment pursuant to Minn. Const. art. VI, § 10.

driven by her husband. The Barreras' car was involved in a collision with a car driven by respondent David Muir and owned by his father, respondent Michael Muir.

Police officers who responded to the accident did not notice that any of the parties was injured. Barrera was examined at a hospital emergency room, however, and diagnosed as having sustained a cranial contusion, cervical strain, and a contusion of the right hand. She was discharged in good condition and given a prescription for Motrin. Several weeks after the accident, Barrera still complained of pain, and her attorney referred her to internist Dr. Paul Larsen, whose medical records note

> neck pain, uncertain etiology, with sensory disturbance by history suggestive of nerve root compression. Low back pain with radiation suggestive of nerve root compression. History of right hand pain, uncertain etiology. Blunt head trauma with recurrent vertigo, uncertain etiology.

Barrera received physical therapy until she and her family returned to Texas for the winter. In Texas, Barrera was treated by Dr. Raul Villanueva, who also ordered physical therapy to relieve Barrera's muscle tightness and limited range of motion.

The Barreras returned to the Red River Valley the following summer. Dr. Larsen referred Barrera to Dr. Robert Ivers for a neurological examination. Dr. Ivers diagnosed Barrera with post-traumatic fibromyalgia and prescribed pain medication, an aquanastics program, thoracic outlet exercises, physical therapy, and medication for her depression.

Dr. Larsen's records of examinations in September and October 1994 indicate that Barrera's condition improved. The records note that Barrera was participating in more household duties, appeared happy, and had full range of motion in her neck.

Barrera again went to Texas for the winter and continued physical therapy, an aquanastics program, and pain medication at the direction of Dr. Villanueva. On her return to Minnesota in the summer of 1995, Barrera complained to Dr. Ivers of headaches and neck and back pain. When additional physical therapy proved unhelpful, Dr. Ivers concluded that Barrera had reached maximum medical improvement and determined that she had suffered a 30 percent whole person permanent impairment based on the diagnosis of fibromyalgia, headaches, thoracic outlet syndrome, and depression.

Before trial, Barrera also was examined by defense neurologist Dr. Rafael Magana. Dr. Magana agreed with Dr. Ivers's conclusion that Barrera suffered a permanent injury, but disagreed as to the nature and extent of the impairment. While concluding that Barrera's "prognosis for recovery should be good," Dr. Magana diagnosed Barrera as having a chronic mild cervical and lumbar strain with a five percent impairment rating based on a limited range of motion.

Twelve days before the trial began, respondents David Muir and Michael Muir mailed to Barrera an offer of judgment in the amount of $5000. Barrera did not respond to the offer.

After a week-long trial, the jury returned a special verdict, awarding Barrera her medical expenses of $12,815.01, lost earnings of $1500, and $2000 for past pain and suffering. The jury concluded, however, that Barrera had not sustained a permanent injury and did not award future damages. The jury also apportioned negligence, finding that Barrera's husband was 50 percent negligent, respondent David Muir was 30 percent negligent, and Barrera was 20 percent negligent.

After offsets for no-fault payments already received and reductions to reflect Barrera's percentage of fault, the trial court concluded that the net judgment against the Muirs was less favorable than their offer of judgment to Barrera. Therefore, even though Barrera was the prevailing party, the trial court granted the Muirs' request for costs and disbursements, finding that the cost-shifting provision of Minn. R. Civ. P. 68 applied. Barrera appeals.

## ISSUES

1. Did the medical evidence require a finding that Barrera sustained permanent injury?

2. Did the trial court err by shifting costs to the prevailing party pursuant to Minn. R. Civ. P. 68, where respondents mailed the offer of judgment 12 days before trial began?

## ANALYSIS

### I.

 On appeal from a denial of a motion for a new trial, a reviewing court defers to the sound discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. *Halla Nursery v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). An appellate court "will sustain a jury verdict if it is possible to do so on any reasonable theory of evidence." *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194, 198 (Minn.1986). In reviewing a jury's answers to special interrogatories, this court will not disturb the jury's verdict unless it is "perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *High Forest Truck Stop, Inc. v. LaCrosse Petroleum Equip. Co.*, 364 N.W.2d 810, 812 (Minn.App.1985), (quoting *Jacobs v. Rosemount Dodge–Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981)).

Barrera contends that medical testimony required a finding that she was permanently injured and therefore entitled to future damages. Because the medical experts agreed that she was permanently injured, Barrera argues that the jury's finding of no permanent injury is contrary to the preponderance of the evidence, and she is therefore entitled to a new trial. Barrera also suggests that the verdict might be the result of bias in Clay County against migrant farm workers.

 The trial court properly rejected Barrera's arguments. A trial court may permit expert testimony to assist the trier of fact in understanding the evidence or in determining a factual issue. *Rowe v. Goldberg*, 435 N.W.2d 605, 607 (Minn.App.1989), *review denied* (Minn. Apr. 24, 1989). Medical expert testimony, however, is "not conclusive on the jury." *Nemanic v. Gopher Heating & Sheet Metal, Inc.*, 337 N.W.2d 667, 670 (Minn.1983); *see also Rud v. Flood*, 385 N.W.2d 357, 360 (Minn.App.1986) (stating that jury is not bound to accept expert's testimony).

Both medical experts testified that Barrera had permanent impairment, but they disagreed as to the nature and degree of impairment. The jury heard Dr. Ivers's testimony that his 30 percent impairment rating was based on a diagnosis of post-traumatic fibromyalgia, headaches, thoracic outlet syndrome, and depression. Dr. Magana, however, concluded that Barrera suffered a chronic mild cervical and lumbar strain and that her prognosis for recovery was good. Dr. Magana testified that Barrera's neurological examination was normal and her physical examination was also normal, with the exception of some limited range of motion. He rated her with a five percent impairment because of the limited range of motion, although he noted that "you cannot prove how much a person can move."

A jury is free to disregard medical testimony in whole or part unless the opinions are

> so positive as to exclude all doubt as to the matter on which they are given and unless based on testimony which is positive, consistent, unimpeached, and uncontradicted.

*Rud*, 385 N.W.2d at 360 (quoting *Krueger v. Knutson*, 261 Minn. 144, 159, 111 N.W.2d 526, 536 (1961)). The testimony presented to the jury was not "so positive as to exclude all doubt." The experts disagreed on the diagnosis, the prognosis, and the degree of impairment. Given these inconsistencies, the jury was free to disregard the experts' opinions in whole or part.

Moreover, the evidence showed that Barrera complained little, if at all, at the scene of the accident, had minor complaints at the emergency room, and did not seek further medical attention for more than two weeks after the accident. The jury also had before it Dr. Larsen's medical records from September and October 1994, showing that Barrera had full range of motion in her neck and had responded favorably to medication and therapy. The jury's determination that Barrera suffered no permanent injury was not so contrary to the evidence as to require a new

trial, and there is nothing in the record to suggest juror bias against Barrera.

## II.

Interpretation of rules of civil procedure presents a question of law reviewed de novo by this court. *Wilkins v. City of Glencoe*, 479 N.W.2d 430, 431 (Minn.App.1992). Under the rules of civil procedure, a party may serve an offer of judgment on an adverse party "[a]t any time prior to 10 days before the trial begins." Minn. R. Civ. P. 68. The offer is irrevocable for 10 days, and if the offeree does not serve written notice of acceptance within 10 days after service of the offer, the offer is deemed withdrawn. *Id.*

Rule 68 is designed "to encourage settlement of actions." *Provident Mut. Life Ins. Co. v. Tachtronic Instruments, Inc.*, 394 N.W.2d 161, 166 (Minn.App.1986). Thus, under rule 68, an offeree must pay the offeror's costs and disbursements "[i]f the judgment finally entered is not more favorable to the offeree than the offer." Minn. R. Civ. P. 68. The advisory committee note regarding the 1985 amendment to the rule states:

> The principal effect of making an offer of settlement under Rule 68 is to shift the burden of paying costs properly taxable under Minn. R. Civ. P. 54.04. Nothing in the rule limits the use of any other devices to encourage the settlement of actions or to reach agreement upon settlement. Thus, although Rule 68 does not apply to any offers of settlement made within 10 days before trial, neither does it prohibit such offers. An offer made within 10 days before trial does not shift the responsibility for taxable costs.

Minn. R. Civ. P. 68 1985 advisory comm. note.

The record shows that the offer here was served 12 days before the trial began. Because the Muirs served the offer of judgment on Barrera by mail, however, the three-day provision of Minn. R. Civ. P. 6.05 applies:

> Whenever a party has the right or is required to act within a prescribed period after the service of a notice or other paper upon the party, or whenever such service is required to be made a prescribed period before a specified event, and the notice or paper is served by mail, three days shall be added to the prescribed period.

*Id.* Rule 6.05 applies to offers of judgment because rule 68 provides that the offeree has the right or is required to act within a prescribed period after service of an offer of judgment and because service of an offer of judgment under rule 68 must be made a prescribed period before a specified event.[1]

No Minnesota courts have addressed the relationship between rule 68 and rule 6.05. In *Clark v. City of Gunnison*, however, the Colorado Court of Appeals construed rules identical with those at issue here and held that

> if an offer of judgment is served by mail, C.R.C.P. 6(e) extends by three days the period during which the plaintiff may accept the offer of judgment. *Thus, an offer of judgment served by mail must be mailed more than thirteen days before the trial is set to begin.*

826 P.2d 402, 404 (Colo.Ct.App.1991) (emphasis added). We agree with the Colorado court's conclusion.

The Muirs served their offer of judgment on Barrera by mail. To invoke the cost-shifting provision of rule 68, Barrera had to have 13 days after mailing to accept the offer. Therefore the mailing had to occur more than 13 days before the trial began. The Muirs served their offer of judgment by mail 12 days before the trial, which was not timely under rule 68 and rule 6.05. We therefore reverse and remand for taxation of costs and disbursements in accordance with this opinion.

## DECISION

The trial court properly denied Barrera a new trial where the record provides a reasonable basis for the jury to determine that Barrera sustained no permanent injury. Because the Muirs did not timely serve their

---

1. We disagree with the Muirs' contention that the service rule, Minn. R. Civ. P. 5.02, is relevant to the issue before the court.

offer of judgment, the trial court erred by shifting costs to Barrera pursuant to Minn. R. Civ. P. 68.

**Affirmed in part, reversed in part, and remanded.**